05-659

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 25

IN RE THE MARRIAGE OF
PEGGY JOYCE JACKSON,

       Petitioner and Appellee,

  v.

DAVID CARTER JACKSON,

       Respondent and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DR 2005-0220
                 Honorable Ingrid Gustafson, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

       Kevin T. Sweeney, Attorney at Law, Billings, Montana

       For Appellee:

       George T. Radovich, Radovich Law Firm, Billings, Montana


                          Submitted on Briefs:  July 6, 2006

                                Decided:  January 31, 2008


Filed:

       _____
                       Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 On March 2, 2005, Peggy Joyce Jackson filed a petition for dissolution of her marriage to David Carter Jackson. The District Court for the Thirteenth Judicial District, Yellowstone County, entered an order on August 29, 2005, dissolving the marriage, distributing the parties' marital property, and awarding maintenance to Peggy. David now appeals. We affirm in part and reverse in part.

¶2 We restate the issues on appeal as follows:

1. Did the District Court err by not accounting for Peggy's destruction of a bed that David estimated was worth $2,000?

2. Did the District Court err by leaving David financially exposed to a Veterans Affairs loan foreclosure on a residence awarded to Peggy?

3. Did the District Court fail to make adequate findings in awarding maintenance?

4. Did the District Court err in making the maintenance award for the duration of Peggy's lifetime or until she remarries, without making findings as to how this maintenance award could be covered long-term?

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Peggy and David married on May 26, 1982, in Glenrock, Wyoming. They subsequently moved to Billings, Montana, in approximately 1985. At the time she filed the petition for dissolution, Peggy was 62 years old and David was 49 years old. Peggy and David have one adopted son, Noah, who is an adult. Since 2001, Peggy has been employed as a lunch supervisor at Sodexho in Billings and earns an annual salary of approximately $6,900 per year. Peggy also receives $523 per month in social security

2

benefits. Prior to 2001, Peggy worked a series of jobs after she and David married, but she was also unemployed for several years to be a stay-at-home mother.

¶4   Although David did not graduate from high school, he later earned his GED, received a bachelor's degree in business administration, and completed auctioneering school. At the time of the dissolution proceedings, David was employed as an apprentice electrician, earning approximately $42,000 per year. He was to receive incremental raises every six months until he completed all the units of his apprenticeship program. David also received $2,400 per month in VA benefits, but he expected this amount to decrease to $1,056 per month, as he was found to have only a 70% disability instead of the previously determined 100% disability and he would no longer receive a dependant benefit upon dissolution of his marriage. The District Court found that David's earnings, overtime pay, and VA benefits combined for an income of approximately $60,000 per year.

¶5   Peggy and David's assets included their family home, which the District Court determined had a fair market value of $150,000. A mortgage debt of approximately $135,400 encumbered the home on a VA home loan obtained through David's eligibility as an Army veteran. The parties' marital property also included a 1979 Ford Lariat pickup truck, a 1979 Ford Custom 100 pickup truck, a 1990 Ford Taurus, a 2004 Ford Explorer, a number of tools primarily used by David during the marriage, and household furnishings. The parties also had debts of approximately $54,700, excluding the home mortgage debt.

3

¶6 In her petition for dissolution, Peggy requested that David be required to pay her $1,500 per month in maintenance and that the assets and debts of the parties be equitably distributed. The District Court then issued a temporary restraining order prohibiting the parties from disposing of any real or personal property, without the consent of the other party or a court order. The court issued the temporary restraining order pursuant to § 40-4-121(3), MCA, which mandates the issuance of such an order when the clerk of a district court issues a summons pursuant to Title 40, Chapter 4, MCA. The court also issued a separate order prohibiting David from entering the family residence.

¶7 The District Court held a nonjury trial on August 17, 2005, and heard testimony from Peggy and David. The court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution on August 29, 2005. The court awarded the family home solely to Peggy, but ordered her to sell or refinance the property within 36 months so that David would not appear as an obligor on the mortgage. If Peggy failed to sell or refinance the property within 36 months, the court stated that the property would be sold and the net proceeds distributed equally between the parties. The court allocated other personal property between David and Peggy. The court also ordered David to pay Peggy $1,000 per month in maintenance until her death or remarriage.

¶8 On September 12, 2005, David filed a Motion to Amend Findings of Fact/Motion for New Trial, Amendment of Judgment and Notice of Hearing. He requested that the court account for Peggy's destruction of a bed worth, he claimed, $2,000. David also requested that the court add language to the judgment stating that maintenance would continue until the "death or remarriage of the petitioner or upon respondent's change of

4

employment or his retirement." The District Court entered an order and memorandum on September 29, 2005, denying David's motion to amend. This appeal followed.

## STANDARD OF REVIEW

¶9 Section 40-4-202, MCA, governs the distribution of a marital estate and vests a district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, ¶ 9, 162 P.3d 72, ¶ 9. We initially review a district court's division of marital property and maintenance awards to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Swanson*, 2004 MT 124, ¶ 12, 321 Mont. 250, ¶ 12, 90 P.3d 418, ¶ 12. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Gerhart*, 2003 MT 292, ¶ 15, 318 Mont. 94, ¶ 15, 78 P.3d 1219, ¶ 15. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *In re Marriage of Rudolf*, 2007 MT 178, ¶ 15, 338 Mont. 226, ¶ 15, 164 P.3d 907, ¶ 15. In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice. *In re Marriage of Killpack*, 2004 MT 55, ¶ 8, 320 Mont. 186, ¶ 8, 87 P.3d 393, ¶ 8. We review a district court's conclusions of law to determine if they are correct. *In re Marriage of Olson*, 2005 MT 57, ¶ 9, 326 Mont. 224, ¶ 9, 108 P.3d 493, ¶ 9.

**DISCUSSION**

¶10　***Issue One.　Did the District Court err by not accounting for Peggy's destruction of a bed that David estimated was worth $2,000?***

¶11　On March 24, 2003, David purchased an Eastman House Omega queen-sized bed from Mattress King in Billings, Montana, for $1,980.　At trial, Peggy admitted that she had destroyed the bed.　In her brief to this Court, Peggy explains that David had "defiled" the bed by "having intimate relations with his girlfriend in that bed," and once she learned of this, she chopped the bed into pieces.　In his motion to amend, David asked the District Court to account for Peggy's destruction of the bed and to credit him with $2,000 out of Peggy's share of the marital estate.　The District Court declined to do so, in its September 29, 2005 order and memorandum, stating that "there was insufficient evidence to determine the fair market value of the used bed was anything more than *de minimus* [sic]" and that although Peggy admitted to destroying the bed, it was unclear if she had done so before or after service of the temporary restraining order.　Accordingly, the court considered what remained of the bed to be part of the household furnishings equitably divided between the parties.

¶12　In support of his contention that the District Court erred in failing to credit him with $2,000 for the destruction of the bed, David claims that the destruction of the bed violated the temporary restraining order, thereby warranting the sanction, and that the District Court erred in finding that the bed had a *de minimis* value, given David testified that he purchased the bed one year earlier for $2,000 (although the record reveals that

6

David purchased the bed on March 24, 2003, over two years prior to the time of trial, for $1,980).

¶13 Peggy argues that the District Court's decision should be upheld because the date of the bed's destruction is unspecified and it is unknown whether it occurred before or after service of the temporary restraining order. She also argues that the bed was clearly not in existence as the time of trial and there was nothing for the court to divide under § 40-4-202, MCA.

¶14 We agree that the District Court did not err in declining to grant David a $2,000 credit for the bed's destruction. The court found that while Peggy admitted to the destruction, it was unclear if she destroyed the bed before or after service of the temporary restraining order. To prevail on appeal, David must demonstrate that this finding is clearly erroneous, but he has failed to present any evidence that Peggy destroyed the bed after service of the temporary restraining order. As such, he has not established clear error on the part of the District Court.

¶15 Furthermore, even assuming, arguendo, that Peggy destroyed the bed after service of the temporary restraining order, David has failed to establish that the District Court's finding as to the fair market value of the bed—namely, that it is nothing more than "*de minimis*"—is clearly erroneous. Although David has produced evidence that the bed had a purchase price of $1,980, we have held that there are three essential principles in determining valuation of marital property subject to dissolution: "(1) proper valuation is not tied to a specific event, (2) there may be more than one valuation point, depending on the kind of property involved, and (3) preferably, *valuation should occur at the time of*

7

*distribution, or, stated another way, present fair market values should be used.*" *In re Marriage of Pospisil*, 2000 MT 132, ¶ 44, 299 Mont. 527, ¶ 44, 1 P.3d 364, ¶ 44 (citing *In re Marriage of Krause*, 200 Mont. 368, 379, 654 P.2d 963, 968 (1982)). Furthermore, "these principles are tempered by the rule that a district court has broad discretion in property distribution." *Pospisil*, ¶ 44. As long as the valuation of property in a dissolution is reasonable in light of all the evidence submitted, we will not disturb the finding on appeal. *In re Marriage of Bartsch*, 2004 MT 99, ¶ 24, 321 Mont. 28, ¶ 24, 88 P.3d 1263, ¶ 24. The bed was over two years old at the time of dissolution, and no party presented any evidence on its fair market value immediately prior to destruction. Accordingly, David has not established clear error in the District Court's finding that the bed's value was *de minimis*, and we affirm the decision of the District Court denying David's request for a $2,000 credit.

¶16 ***Issue Two. Did the District Court err by leaving David financially exposed to a VA loan foreclosure on a residence awarded to Peggy?***

¶17 David argues that the District Court erred by leaving him financially exposed to a potential VA loan foreclosure on the family home, which the District Court awarded to Peggy. As an Army veteran, David qualified for a VA home loan, which he used to finance the family home. David claims that the terms of the loan require him to pay off the loan in full or face a post-foreclosure judgment entered against him. In awarding the home to Peggy, the District Court ordered her to sell or refinance the property within 36 months so that David did not appear as an obligor on the mortgage. The court stated that

8

if she failed to do this, the property would be sold and the net proceeds distributed equally between the parties.

¶18 David claims that the District Court's action in awarding the home to Peggy under the provision that she sell or refinance the home within 36 months was "a failure of conscientious judgment that mandates reversal." However, David fails to show how granting this period of time in which to sell or refinance the house constitutes "a failure of conscientious judgment" by the District Court. David cites no legal authority in support of this conclusory assertion, as required by M. R. App. P. 12(1)f.,[1] nor does he explain why granting this time period exceeds the bounds of reason resulting in a substantial injustice. Accordingly, we conclude that the District Court did not abuse its discretion in granting this time period.

¶19 ***Issue Three. Did the District Court fail to make adequate findings in awarding maintenance?***

¶20 David next argues that the District Court failed to make any findings as to Peggy's budget or necessary needs. As a result, David claims that there is "no recordation of the essential and determining facts upon which the District Court used to make its determination of maintenance." He alleges that the District Court was merely "pulling a number out of the air" when it awarded maintenance to Peggy. David claims that the

---

[1] "The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on." M. R. App. P. 12(1)f. " 'Under Rule 23, M.R.App.P. [now M. R. App. P. 12(1)f.] it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position.' " *State v. St. Germain*, 2007 MT 28, ¶ 41 n. 1, 336 Mont. 17, ¶ 41 n. 1, 153 P.3d 591, ¶ 41 n. 1 (quoting *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19).

9

District Court's determination is "manifestly deficient" to justify the maintenance request under § 40-4-203, MCA.

¶21 Section 40-4-203, MCA, governs maintenance awards in a dissolution proceeding. Section 40-4-203(1) provides, in pertinent part, as follows:

> (1) In a proceeding for dissolution of marriage . . . , the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> (a) lacks sufficient property to provide for his reasonable needs; and
> (b) is unable to support himself through appropriate employment . . .

To grant a maintenance order under the statute, a district court needs to find: (1) that the spouse seeking maintenance lacks sufficient property to provide for his or her reasonable needs *and* (2) is unable to support himself or herself through appropriate employment. *See In re Marriage of Bee*, 2002 MT 49, ¶ 28, 309 Mont. 34, ¶ 28, 43 P.3d 903, ¶ 28.

¶22 Here, the District Court found that Peggy was unable to support herself and maintain her lifestyle through her employment, thus satisfying the finding required by § 40-4-203(1)(b), MCA. However, the court failed to make any finding as to whether Peggy lacked sufficient property to provide for her reasonable needs, as required by § 40-4-203(1)(a), MCA. We hold that the District Court erred in failing to make the required findings under § 40-4-203(1), MCA, to justify an award of maintenance.

¶23 Furthermore, in issuing an order of maintenance, § 40-4-203(2), MCA, requires a district court to "consider[] all relevant facts including":

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

  (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

  (c) the standard of living established during the marriage;

  (d) the duration of the marriage;

  (e) the age and the physical and emotional condition of the spouse seeking maintenance; and

  (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Although a district court must consider each of these factors, "it need not make a specific finding relating to each, provided that this Court can determine the trial judge actually considered each factor." *Rudolf*, ¶ 27; *see e.g. In re Marriage of Haines*, 2002 MT 182, ¶ 18, 311 Mont. 70, ¶ 18, 53 P.3d 378, ¶ 18. "These factors must be considered by the district court as a whole in the determination of a final maintenance award." *Rudolf*, ¶ 27.

¶24 Here, David raises the subsection (2) factors only tangentially. He does not develop an argument with respect to these factors. Therefore, we will not consider them further. *See* ¶ 18 n.1, *supra*.

¶25 We hold that the award of maintenance to Peggy is unsupported, since the District Court failed to make both of the preliminary findings required by § 40-4-203(1), MCA.

¶26 ***Issue Four. Did the District Court err in making the maintenance award for the duration of Peggy's lifetime or until she remarries, without making findings as to how this maintenance award could be covered long-term?***

¶27 David claims that the District Court erred in failing to address how the award of lifetime maintenance for Peggy could be funded in light of David's age and the possibility of his retirement in the near future. David raised this issue in his motion to amend, but the District Court determined that § 40-4-208, MCA, provided him with

11

"adequate protection from an unconscionable maintenance obligation in the event there is a substantial and continuing change in his or [Peggy's] circumstances."

¶28 David contends that § 40-4-208, MCA, provides him with little comfort given the heavy burden of showing unconscionability that David claims the statute and this Court place on a party seeking modification of a maintenance award. Peggy argues that all the factors enumerated in § 40-4-203(2)(a)-(f), MCA, were met, and that the court specifically took David's ability to pay into account in its findings. Peggy further argues that David presented no testimony indicating that his income would drop, and she agrees with the District Court in that § 40-4-208, MCA, provides him with an opportunity to petition for modification of maintenance.

¶29 Section 40-4-208, MCA, governs modification of maintenance. Most relevant to this appeal, § 40-4-208(2)(b)(i), MCA, provides: "Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made: (i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable . . . ." We have declined to create a definition of unconscionability and our interpretation of what is unconscionable is made subject to the underlying facts on a case-by-case basis. *Olson*, ¶ 12. A trial court must find both substantial and continuing changes and unconscionability before modifying a previous order of support. *In re Marriage of Schmieding*, 2003 MT 246, ¶ 36, 317 Mont. 320, ¶ 36, 77 P.3d 216, ¶ 36.

12

¶30    We agree with David that the District Court erred in making an award of lifetime maintenance for Peggy.    Section 40-4-203(2)(f), MCA, requires a District Court to consider "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."    While the District Court entered findings as to David's ability to pay maintenance *at the present time* based on his income as an apprentice electrician and his VA benefits, the court did not enter any findings as to how the maintenance award could be funded *long-term*.    David testified in this regard that he is approaching retirement age and that he has degenerative health problems.    Furthermore, he stated that he would have to work over twenty years to receive federal government retirement benefits; however, due to his health condition, he predicted he might work only five or six more years.    This testimony indicates that David's financial situation is likely to change in the near future due to retirement or an inability to work—a fact which bears on his "ability . . . to meet his needs while meeting those of [Peggy]" over the long-term and which, therefore, must be considered in evaluating Peggy's request for lifetime maintenance.    Section 40-4-203(2)(f), MCA. Given his testimony, the fact that David may later return to court and seek relief under § 40-4-208, MCA, on the ground of "changed circumstances so substantial and continuing as to make the terms [of the decree] unconscionable" does not supplant the requirement that his ability to meet his needs while meeting those of Peggy over the long-term be considered *before* Peggy's request for lifetime maintenance is granted.[2]

---

[2]  In reaching this holding, we emphasize that we are not introducing a new requisite for awarding maintenance under § 40-4-203, MCA.  The necessity of considering David's ability to

13

¶31 Because the District Court did not consider David's ability to meet his needs and those of Peggy over the long-term, relying instead on his ability to seek relief under § 40-4-208, MCA, we hold that the District Court erred in making an award of lifetime maintenance for Peggy.

## CONCLUSION

¶32 David has failed to demonstrate that the District Court erred in not granting him a $2,000 credit for the destruction of the bed. Likewise, David has failed to show how granting Peggy 36 months to refinance or sell the family home was an abuse of discretion by the District Court. However, because the District Court failed to make both of the preliminary findings required by § 40-4-203(1), MCA, the award of lifetime maintenance to Peggy is unsupported. We vacate that award and remand the matter to the District Court for reconsideration of Peggy's maintenance request under a proper and complete application of § 40-4-203, MCA, including consideration of David's ability to fund the maintenance long-term.

¶33 Affirmed in part and reversed in part.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER

pay over the long-term is based squarely on the facts presented here.

14