FILED

January 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0800

DA 13-0800

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 7

IN RE THE MARRIAGE OF:

GAIL R. PATTON,

Petitioner and Appellant,

v.

BILLY P. PATTON,

Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDR-11-162
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jill Deann LaRance, LaRance & Syth, P.C.; Billings, Montana

For Appellee:

Curtis G. Thompson, Thompson Law, P.C.; Great Falls, Montana

Submitted on Briefs:  July 16, 2014
Decided:   January 13, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Gail R. Patton (Gail) appeals the order of the Eighth Judicial District Court, Cascade County, adopting the Standing Master's findings of fact, conclusions of law, and final decree of dissolution of her marriage to Billy P. Patton (Bill), and the failure of either the Standing Master or the District Court to rule on her post-trial motions.  We reverse and remand for further proceedings consistent with this Opinion.

¶2     We restate the issues on appeal as follows:

1. *Whether the District Court abused its discretion by not ruling on Gail's post-trial motions.*

2. *Whether the District Court erred in its review of the Standing Master's Report in the following respects:*

   a. *The Standing Master's findings of fact.*

   b. *The Standing Master's conclusions of law.*

   c. *The Standing Master's division of the marital estate and order that Bill pay a portion of Gail's debt in lieu of maintenance.*

3. *Whether the District Court abused its discretion by adopting the Standing Master's Report which excluded evidence of Bill's alleged abuse of Gail when determining maintenance payments.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Gail and Bill were married in January of 1998.  Bill was married twice before his marriage to Gail, and he has adult children.  This was Gail's first marriage.

¶4     Before their marriage, Gail lived and worked in Canada.  She worked for the Canada motor vehicle registration division, taught music, sold real estate, and worked in the restaurant and food industry.  At the time that she married Bill, Gail was 43, renting an

2

apartment, driving a used vehicle, and she had approximately $30,000 in a personal bank account. Bill entered the marriage with a great deal of real and personal property, including the marital home, office property, a veterinary practice, and ranching operations including livestock and range land.

¶5     During their marriage, Gail and Bill enjoyed a comfortable lifestyle. Bill practiced as a veterinarian, and he placed $1,500 per month in the parties' shared account for Gail to spend on household expenses. Gail was primarily a homemaker, but she also worked part-time as a music teacher, and caterer, earning between $4,000 and $6,000 per year. Gail kept the parties' marital home immaculate, cooked meals, assisted with garden and yard work, and oversaw home maintenance.

¶6     Gail's health declined considerably during her marriage to Bill. Gail's left shoulder is atrophied and has limited mobility. She continually suffers from abdominal, knee, and neck pain, and she has been diagnosed with post-traumatic stress disorder (PTSD).

¶7     Gail and Bill separated in February 2011. Gail filed for dissolution of marriage on March 4, 2011. After their separation, Gail's standard of living diminished considerably. She moved into subsidized housing and had limited assets. Working as a substitute teacher and paraprofessional for the Great Falls Public Schools, Gail earned approximately $1,300 between January 2012 and May 2012. Gail also earned $2,245 teaching at the Deep Creek School that spring; however, the Deep Creek School closed after the spring semester of 2012.

¶8     On July 13, 2012, the District Court filed an order granting Gail temporary maintenance and attorney's fees. The order acknowledged that Gail had no

3

income-producing assets, she had sold her piano for $7,000 to cover her attorney's fees, and she had taken out a loan of approximately $10,000 from her parents for attorney's fees and living expenses. Based on Bill and Gail's monthly income and expenses, Bill was ordered to pay Gail $1,000 per month for six months, backdated to June 1, 2012, and $5,000 of Gail's attorney's fees.

¶9      On May 1, 2012, the District Court appointed a standing master to oversee the case. The Standing Master conducted a two-day bench trial on August 30–31, 2012. The Standing Master entered her findings of fact, conclusions of law, and final decree of dissolution (Report) with the District Court on March 7, 2013. The Standing Master's Report apportioned to Gail the following personal property worth a total of $36,300 of the marital estate: art in Gail's possession, Villeroy & Boch china, a brass and tile occasional table, one leather couch, chair, and ottoman, miscellaneous stainless steel cookware, a Pontiac G-6, Gail's interest in the Canadian pension system (the value of which is unknown), Gail's bank account, and the proceeds of a personal injury claim of $16,000. Bill was ordered to pay Gail $46,566[1] as her equitable share of the marital real property, livestock, and Bill's retirement accounts. Bill was also ordered to pay $5,000 of Gail's attorney's fees, which at the time of the hearing totaled over $30,000, and he was ordered to pay $11,430.18 worth of Gail's outstanding medical debt "in lieu of maintenance." In calculating her award, the

---

[1] The Standing Master's Report lists Gail's share of the property as 10% of the Antelope Lane Property and the Cascade Office Property ($28,530), 5% of the livestock value ($7,100), and 10% of the Waddell and Reed accounts ($12,566), which totals $48,196. However, the Report erroneously listed Gail's share of this property as $46,566.

4

Report noted that "Gail has not been restricted by any physician from working full time because of her physical limitations and PTSD."

¶10 The Standing Master valued the entire marital estate at $1,078,005.70, and the liabilities of the estate totaled $55,632.34. According to the Standing Master's Report, Gail's share of the marital estate, including all assets apportioned to her and liabilities to be paid by Bill, totaled $99,296.18.[2] The Standing Master apportioned the remainder of the estate to Bill, including the marital home and other real estate, vehicles, bank accounts, livestock, the contract for sale of his veterinary clinic, and art, totaling approximately $995,140 worth of assets.

¶11 Bill filed objections to the Report on March 21, 2013. Gail filed objections to the Report on March 22, 2013. Gail's objections included the valuation of the marital home, livestock, and Bill's income, the calculations of her monthly expenses, and the Report's calculation of her existing medical debt and attorney's fees. Also on March 22, 2013, Gail filed a motion for additional evidence pursuant to M. R. Civ. P. 59 (Rule 59 Motion), setting forth an additional claim for maintenance due to the deterioration of her knee since the August 2012 trial and her inability to pay existing medical bills and attorney's fees.

¶12 On or about May 8, 2013, Gail was diagnosed with invasive breast carcinoma and was in immediate need of surgery. On May 23, 2013, Gail filed a motion to amend the findings or reopen the case to take additional evidence (Motion to Amend), in which she again

---

[2] In the Standing Master's Report, Gail was awarded $36,300 (personal property), $46,566 (the erroneous calculation of Gail's share of the marital real property, livestock, and Bill's retirement accounts), $11,430.18 payment of existing medical debt, and a $5,000 payment by Bill of existing attorney's fees, for a total award of $99,296.18.

5

requested the District Court reopen the case and consider the evidence of her breast cancer diagnosis in its division of the marital estate and maintenance.

¶13 The District Court held a hearing on September 17, 2013, to address both parties' objections to the Standing Master's Report, Gail's Rule 59 Motion, and her Motion to Amend. However, the District Court declined to rule on Gail's Rule 59 Motion or her Motion to Amend. The District Court held that it was not appropriate to take additional evidence about events occurring since the filing of the Report on March 7, 2013, stating: "[T]he Court finds that [taking additional evidence] is beyond the scope of judicial review as it relates to the Court's appropriate role in this matter."

¶14 On October 7, 2013, the District Court filed an order adopting the Standing Master's Report with only minor adjustments made to Bill's income sources and Gail's medical bills.[3] Gail was awarded $97,054.19 of the marital estate after the adjustments in the District Court's order. The District Court ruled that Gail's Rule 59 Motion and Motion to Amend were "to be left to the discretion of the Standing Master who will resume jurisdiction of this case upon the filing of this Order." On October 25, 2013, Bill filed a Notice of Entry of Judgment with the District Court and served it on Gail.

¶15 On November 26, 2013, Gail filed two separate motions with the District Court. First, Gail moved that the Standing Master rule on her Rule 59 Motion and her Motion to Amend, citing the District Court's October 7, 2013 order which stated that the Standing Master

---

[3] The changes to the Standing Master's Report included an adjustment to Gail's bill owed to Dr. James E. Threatt from $2,500 down to $258.01 to be paid by Bill, and the inclusion of $675.93 of Gail's other medical debt also to be paid by Bill. "Rental/lease income" and "ranching" were also added to Bill's sources of income.

6

would "resume jurisdiction" of the matter. Second, Gail moved to modify or amend the judgment to provide for maintenance pursuant to § 40-4-208, MCA (Motion for Maintenance), which also referenced her previous Rule 59 Motion and her Motion to Amend. The motion cited her increased need for maintenance due to her breast cancer and her inability to work and support herself.

¶16 Before the District Court ruled on either of her November 26, 2013 motions, Gail filed a notice of appeal to this Court on November 27, 2013. Gail appeals the inaction by both the Standing Master and the District Court on her post-trial motions, and she appeals the order of the District Court adopting the Standing Master's Report.

## STANDARDS OF REVIEW

¶17 This Court reviews a district court's decisions de novo to determine whether it applied the correct standard of review to a master's findings of fact and conclusions of law. *In re the Parenting of G.J.A.*, 2014 MT 215, ¶ 11, 376 Mont. 212, 331 P.3d 835. In a case tried before a standing master, "we apply the same standard of review to an adopted master's report that we do to any other district court order." *Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 28, 298 Mont. 213, 994 P.2d 1124.

¶18 We review a district court's division of marital property and maintenance awards to determine whether the findings of fact upon which the division is based are clearly erroneous. *Jackson v. Jackson*, 2008 MT 25, ¶ 9, 341 Mont. 227, 177 P.3d 474. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that

the district court made a mistake. *Jackson*, ¶ 9. We review a district court's conclusions of law to determine if they are correct. *Jackson*, ¶ 9.

¶19 Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *Jackson*, ¶ 9. In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice. *Jackson*, ¶ 9.

¶20 "The standard of review for discretionary trial court rulings is abuse of discretion. This standard may be applied to rulings on posttrial motions." *In re Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105.

## DISCUSSION

### Proceedings Before a Standing Master

¶21 The Eighth Judicial District, Cascade County, created a standing master position in 2010 to assist with matters of family law, child abuse and neglect, and guardianship and conservatorship cases. Charter Or. Establishing Dist. Standing Master, *In re the Est. of a Dist. Standing Master for All Dep't of This Dist. Ct.* 1, 4 (Mont. 8th Jud. Dist. June 25, 2010) (Charter Order). The standing master is appointed in such cases at the discretion of the district court to aid in the timely resolution of these cases. Charter Order at 1–2.

¶22 District courts are authorized to appoint standing masters pursuant to Rule 53 of the Montana Rules of Civil Procedure and §§ 3-5-124 to 126, MCA. A standing master must be appointed by an order of reference from the district court. M. R. Civ. P. 53(b); § 3-5-124(1), MCA. The district court has broad authority to specify or limit the standing master's duties.

8

M. R. Civ. P. 53(c); § 3-5-124(2), MCA. "Pursuant to §§ 3-5-124 through 3-5-126, MCA, and the inherent power of the court, the respective referring courts shall respectively retain and exercise supervisory control over the District Standing Master." Charter Order at 6.

¶23 Subject to the order of reference, a standing master shall hold a hearing, and prepare findings of fact and conclusions of law. M. R. Civ. P. 53(c)(2), (e)(1); § 3-5-126(1), MCA. The master's findings of fact and conclusions of law shall be set forth in a report to the district court. M. R. Civ. P. 53(e)(1); § 3-5-126(1), MCA. "The Master's report shall not be effective as an order of the referring court unless and until the court accepts, adopts, or approves the report as an order of the court." Charter Order at 10; *see also* M. R. Civ. P. 53(e)(2); § 3-5-126(2), MCA.

¶24 A party may object to a standing master's report within ten days after being served with notice of the filing of the report, and the district court must then hold a hearing on the objections. M. R. Civ. P. 53(e)(2), § 3-5-126(2), MCA. A district court reviews the standing master's findings of fact for clear error. *In re the Parenting of G.J.A.*, ¶ 19. A district court, "may adopt the findings and conclusions or order and may modify, reject in whole or in part, receive further evidence, or recommit the findings and conclusions or order with instructions." Section 3-5-126(2), MCA; *see also* M. R. Civ. P. 53(e)(2) ("After [a] hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions.")

¶25 "A district court may receive additional evidence and any findings made on the basis of that evidence will be reviewed by this Court for clear error." *In re the Parenting of G.J.A.*, ¶ 19. "Although the court has discretion to take supplemental evidence, an aggrieved

9

party has no vested right to present supplemental evidence upon judicial review of a judgment of the District Standing Master." Charter Order at 11 (citing § 3-5-126(1), MCA). A district court "may elect to take supplemental evidence when warranted in the interests of justice" pursuant to § 3-5-126(2), MCA. Charter Order at 11–12.

¶26 "[I]f the Master's findings of fact are not clearly erroneous and its conclusions of law are correct, then the additional standard of review for property division, child custody, child support, maintenance, and attorney fee determinations under Title 40, Chapter 4, MCA, is an abuse of discretion." Charter Order at 13–14 (citing *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339; *In re Marriage of Stufft*, 286 Mont. 239, 243–44, 950 P.2d 1373, 1376 (1997)).

¶27 *1. Whether the District Court abused its discretion by not ruling on Gail's post-trial motions.*

¶28 Gail contends that the District Court abused its discretion when it failed to rule on her Rule 59 Motion or her Motion to Amend. Gail's motions below cited the court's authority to grant a new trial, and alter or amend a judgment under M. R. Civ. P. 59, and a district court's authority to take additional evidence after the filing of a master's report. Gail noted that M. R. Civ. P. 53(e) provides: "[T]he court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions."

¶29 Gail argued below and on appeal that her situation is similar to that of *In re Marriage of Kink*, 226 Mont. 313, 735 P.2d 311 (1987). In *Kink*, the district court held a trial to determine the division of marital property in a dissolution action, after which it entered findings of fact. Both parties filed motions to amend the findings. After a hearing on the

10

motions, the district court issued an order requesting both parties to appear for the purpose of testifying on their intentions to handle a marital asset which the court determined to be a joint venture. *In re Marriage of Kink*, 226 Mont. at 314–15, 735 P.2d at 312–313. No entry of judgment had been filed in the dissolution at the time of the order requesting additional evidence. *In re Marriage of Kink*, 226 Mont. at 316, 735 P.2d at 313.

¶30 On appeal in *Kink*, we held that the district court's order requesting additional testimony on the joint venture was effectively a grant of a new trial on the court's own initiative, pursuant to M. R. Civ. P. 59(d).[4] *In re Marriage of Kink*, 226 Mont. at 316, 735 P.2d at 313. We concluded there was no final judgment in the dissolution action and held that the district court had broad authority to reopen a case and take additional evidence, stating: "It is well settled that the ruling on a motion to reopen a case for taking further testimony is within the sound discretion of the district court, which will only be reversed on appeal for manifest abuse of that discretion." *In re Marriage of Kink*, 226 Mont. at 316, 735 P.2d at 313.

¶31 Comparing her situation to *Kink*, Gail argued to the District Court:

> [W]e believe that Gail has met the independent standard for granting of a new trial under Rule 59 and/or the standard for taking additional evidence before a judgment is final, as set forth in [*In re the Marriage of Kink*]. There has been no final judgment in this case, and, therefore, [*Kink*] stands for the proposition that the Court has the ability to amend or modify findings and to take additional evidence.

---

[4] In 1987, at the time of *Kink*, the applicable language for the court ordering a new trial on its own initiative was found in M. R. Civ. P. 59(e), but is currently found in M. R. Civ. P. 59(d).

11

¶32    Bill argues on appeal that Gail's Rule 59 Motion and her Motion to Amend were both "deemed denied" under M. R. Civ. P. 59(f) because the District Court did not rule on either motion within 60 days.  Bill argues that the Rule 59 Motion was an attempt to relitigate issues because Gail presented evidence of knee problems at the trial in August of 2012.  Bill also argues that Gail's Motion to Amend was not timely because it was filed on May 23, 2013, outside the ten-day time period in which Gail could object to the standing master's Report under § 3-5-126(2), MCA.

¶33    In declining to consider Gail's motions, the District Court held that taking additional evidence was "beyond the scope of judicial review as it relates to the Court's appropriate role in this matter."  This was incorrect.  Both M. R. Civ. P. 53(e)(2) and § 3-5-126(2), MCA, specifically provide that after a hearing on the objections to the standing master's report, the District Court may receive further evidence.  Alternatively, the District Court may recommit the standing master's findings and conclusions or order with instructions.

¶34    At the September 17, 2013 hearing on the parties' objections, the District Court asserted that a party must move for a district court to resume primary administration of a case after the filing of a standing master's report.  However, when the Standing Master filed her Report, this effectively terminated her administration of the case and transferred it back to the District Court by operation of statute.  Upon filing of the report, a standing master is divested of authority to further rule on the matter, unless the District Court chooses to "recommit it with instructions," after reviewing the report.  M. R. Civ. P. 53(e)(2); § 3-5-126(2), MCA.

12

¶35 Under the plain language of both M. R. Civ. P. 53(e)(2) and § 3-5-126(2), MCA, the District Court should have either ruled on Gail's motions or, before adopting the Report, recommitted the case to the Standing Master with instructions to consider and rule on the motions. Instead, the District Court issued an order and judgment in which it affirmed the Standing Master's Report with only minor modifications. Within the body of the District Court's order, it stated that Gail's motions "are to be left to the discretion of the Standing Master who will resume jurisdiction of this case upon the filing of this Order." If this statement was intended to be a recommital of the case to the Standing Master pursuant to M. R. Civ. P. 53(e)(2) and § 3-5-126(2), MCA, it appears the Standing Master did not understand it as such because she took no further action on Gail's motions after the District Court issued its order.

¶36 On November 26, 2013, Gail made further efforts to get the Standing Master and the District Court to address her health concerns by filing both a request for the Standing Master to rule on her motions based on the language in the District Court's order and her Motion for Maintenance pursuant to § 40-4-208, MCA. However, because Bill filed a notice of entry of judgment on October 25, 2013, Gail also filed her notice of appeal on November 27, 2013.

¶37 Gail's Motion for Maintenance renewed her previous motions made pursuant to M. R. Civ. P. 53 and 59, and cited § 40-4-208, MCA, which allows a party to move for a modification of maintenance within two years of a final decree of dissolution "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA. Gail's Motion for Maintenance again

13

cited her inability to work and support herself due to her breast cancer and deteriorating health.

¶38    If a notice of appeal is filed before the disposition of a Rule 59 Motion, "a premature notice of appeal will be treated as filed on the date the district court decides the motion to alter or amend judgment or the motion is deemed denied." *Estate of Earl M. Pruyn v. Axmen Propane, Inc.*, 2008 MT 329, ¶ 9, 346 Mont. 162, 194 P.3d 650 (citing M. R. App. P. 4(5)(a)(iv)(E)). However, "[t]he district court is not deprived of jurisdiction to enter its order on any such motion by the premature filing of a notice of appeal." M. R. App. P. 4(5)(a)(iv)(E). Therefore, the District Court had the authority to rule on Gail's Motion for Maintenance for 60 days after it was filed on November 26, 2013, despite her filing of a notice of appeal.

¶39    We have previously held that in certain circumstances, when a court does not exercise its discretion in a matter, this itself constitutes an abuse of discretion. *State v. Weaver*, 276 Mont. 505, 509, 917 P.2d 437, 440 (1996). As discussed above, the District Court should have either ruled on Gail's motions or recommitted them to the Standing Master for ruling. The District Court abused its discretion by declining to rule on Gail's post-trial motions, including her Motion for Maintenance.


¶40    *2. Whether the District Court erred in its review of the Standing Master's Report.*

¶41    This Court reviews a district court's decisions de novo to determine whether it applied the correct standard of review to a master's findings of fact and conclusions of law. *In re the Parenting of G.J.A.*, ¶ 11. The findings of fact in a standing master's report must be

14

reviewed by a district court for clear error, *In re the Parenting of G.J.A.*, ¶ 19, "giving due deference to the broad discretion of the Master to assess the relative credibility of the witnesses and the weight of the evidence." Charter Order at 12 (citing M. R. Civ. P. 52(a); *In re Marriage of Swanner-Renner*, 2009 MT 186, ¶ 13, 351 Mont. 62, 209 P.3d 238; *Maloney*, ¶ 28).

¶42 A finding is clearly erroneous if it is not supported by substantial evidence, if the standing master misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re Marriage of Swanner-Renner*, ¶ 13. "The burden of challenging the master's findings is on the party objecting; the related burden of establishing that a finding is clearly erroneous also is on the party objecting." *Maloney*, ¶ 28.

¶43 Absent clear error, a standing master's property division, child custody, child support, maintenance, and attorney fee determinations are reviewed for an abuse of discretion. Charter Order at 13–14. A standing master's conclusions of law are reviewed by the district court to determine if they are correct. M. R. Civ. P. 53(3); § 3-5-126(3), MCA; *see also Maloney*, ¶ 28.

> a. *Whether the Standing Master's Report contained clearly erroneous findings of fact.*

¶44 After a standing master's report is filed, the parties may file specific objections to the report within ten days. M. R. Civ. P. 53(e)(2); § 3-5-126(2), MCA. "The legislature twice referenced the requirement that parties file 'specific objections' to the findings or

15

conclusions of a standing master" in § 3-5-126(2), MCA. *In re Marriage of McMichael*, 2006 MT 237, ¶ 15, 333 Mont. 517, 143 P.3d 439. "Allowing courts to modify findings or conclusions not specifically objected to by either party would deny adequate notice and due process to the parties and lead to an absurd result." *In re Marriage of McMichael*, ¶ 15. The Charter Order outlines the procedure for objecting to a standing master's report pursuant to § 3-5-126(2), MCA. The objections must meet the following requirements:

    (1)    be written;

    (2)    be timely-filed;

    (3)    specifically identify the subject finding of fact or conclusion of law asserted to be in error;

    (4)    for each such assertion of error, *specifically state with particularity* the asserted factual or legal basis or reason for the assertion with citation to relevant legal authority and, as applicable or necessary, precise citation to the pertinent section of the hearing record or transcript.

Charter Order at 9.

¶45    Gail's objections to the Standing Master's Report did not cite to the transcript of the trial held August 30–31, 2012, and she failed to make specific citations to the trial transcript at the hearing on September 17, 2013. The Charter Order states that "an objecting party's failure to comply with these procedural and substantive requirement[s] for objections to the Master's report may, in the discretion of the court, subject the party's objections to adverse summary ruling." Charter Order at 9. The District Court stated at the hearing:

> Now, that is a burden that's on the moving party when you are coming in and making objections to findings of fact, to give me a reference to the hearing record, so that I can review that and determine whether or not there is substantial credible evidence in the record to support the finding that is at issue here.

16

Based on Gail's lack of citation to the trial transcript in her objections and at the hearing, it was within the District Court's discretion to subject Gail's objections to an adverse summary ruling, which it did.

*b. Whether the Standing Master's Report contains errors of law.*

¶46 Section 40-4-202, MCA, governs the distribution of a marital estate and vests a district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *Jackson v. Jackson*, 2008 MT 25, ¶ 9, 34 Mont. 227, 177 P.3d 474. A marital estate includes all the "property and assets belonging to either or both [spouses], however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." Section 40-4-202(1), MCA. In making an equitable distribution of the marital estate, "the court shall consider the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties." Section 40-4-202(1), MCA.

¶47 If a marital estate includes property that is pre-acquired, gifted, or inherited by one or both spouses, "the court must additionally consider the contributions of the other spouse to the marriage including the nonmonetary contribution of a homemaker; the extent to which such contributions have facilitated the maintenance of this property; and whether or not the property division serves as an alternative to maintenance." *In re Funk*, 2012 MT 14, ¶ 34, 363 Mont. 352, 270 P.3d 39.

17

¶48 The Report recognized that Gail made significant nonmonetary contributions to the marriage as a homemaker. In considering the factors under § 40-4-202(1), MCA, however, the Report stated that "the significance of Gail's contributions was necessarily lessened by Bill's retirement," thereby distinguishing Gail and Bill's marriage from *In re Funk* and *In Re Marriage of Tummarello*, 2012 MT 18, 363 Mont. 387, 270 P.3d 28, as those cases pertain to the nonmonetary contributions of a homemaker to a marital estate.

¶49 The Standing Master erred in her assertion that Gail's and Bill's respective stages of life "lessened Gail's contribution" to the marital estate. Nothing in *Funk* or *Tummarello* supports the premise that one party's stage of life "necessarily lessen[s]" the other party's contributions to the marital estate. Gail made significant contributions to the maintenance of Bill's premarital property as a homemaker, and her contributions to the property continued after Bill's retirement. The Standing Master erred in weighing the factors of § 40-4-202(1), MCA, in regards to Gail's nonmonetary contributions to the marriage as a homemaker.

¶50 The Standing Master further erred by denying Gail maintenance payments after specifically finding that she qualified for maintenance. "Generally, maintenance is not favored. Maintenance is appropriate when a spouse has insufficient assets to cover living expenses and reasonably cannot earn a sufficient amount to maintain an appropriate standard of living." *In re Marriage of Crilly*, 2009 MT 187, ¶ 10, 351 Mont. 71, 209 P.3d 249 (citations omitted). Although property can be awarded in lieu of maintenance under § 40-4-202(1), MCA, "The term 'sufficient property' has been interpreted to mean income-producing property rather than income-consuming property." *In re Marriage of Tow*, 229 Mont. 483, 486, 748 P.2d 440, 441 (1987).

18

¶51 "The maintenance order must be in amounts and for periods of time that the court considers just." Section 40-4-203(2), MCA. In awarding maintenance, the court must consider the party's financial resources, the time it takes for the party requesting maintenance to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age, health, and emotional condition of the party seeking maintenance, and the ability of the paying party to meet their own needs while paying maintenance. Section 40-4-203(2)(a) to (f), MCA.

¶52 The Standing Master found many of the factors in § 40-4-203(2), MCA, weighed in favor of maintenance payments to Gail. The Report states that Gail "has found it difficult to obtain full time employment," and "Gail has essentially no property and currently lacks the ability to meet her needs independently." While the couple was "comfortable during the marriage," the Standing Master noted that "Gail's standard of living has diminished dramatically since the parties' separation. She is now living in subsidized housing." Gail's post-separation monthly expenses were found to be $805 per month, a figure based on her rent while living in subsidized housing. In contrast, Bill's monthly expenses were listed as $1,400.

¶53 Our statutes and case law do not support the Standing Master's conclusion that Bill's payment of a portion of Gail's debt was appropriate in lieu of maintenance payments. Gail was unable to meet her needs independently, especially given the standard of living established during her marriage. Section 40-4-203(2), MCA. The finding that Gail's monthly expenses were $805 was based on her rent while living in subsidized housing, not the standard of living established during the marriage. Furthermore, a payment of debt is not

19

"income-producing property" which would help Gail meet her own needs in the future. *In re Marriage of Tow*, 229 Mont. at 486, 748 P.2d at 441.

¶54 We remand these matters to the District Court for correction of these errors of law. The Standing Master erred in her consideration of Gail's contribution to the marriage as a homemaker, and the denial of maintenance payments to Gail was erroneous when she was only awarded a payment of a small portion of her debt.

> *c. Whether the District Court abused its discretion by adopting the Standing Master's division of the marital estate and order that Bill pay a portion of Gail's debt in lieu of maintenance.*

¶55 The Standing Master considered Gail's health and ability to work to support herself when she divided the marital estate and ordered payment of a portion of Gail's debt in lieu of maintenance pursuant to the factors outlined in § 40-4-202(1), MCA and § 40-4-203(2), MCA. As the division of the marital estate currently stands, Gail received only $82,866[5] from an estate valued at $1,078,005.70 after a 14-year marriage to which she made significant contributions as a homemaker. The determination that Gail would not receive maintenance was premised largely on Gail's ability to work and support herself, which Gail contends in her post-trial motions has been adversely affected by her breast cancer diagnosis and other health issues. The consideration of Gail's post-trial motions and the corrections of the errors of law noted above will significantly impact the division of the marital estate and the award of maintenance to Gail; therefore, we decline to review the District Court's adoption of the Standing Master's Report for an abuse of discretion at this time.

---

[5] In the Standing Master's Report as adopted by the District Court, Gail was awarded $36,300 (personal property), and $46,566 (the erroneous calculation of Gail's share of the marital real property, livestock, and Bill's retirement accounts), which totals $82,866.

20

¶56    *3. Whether the District Court abused its discretion by adopting the Standing Master's Report which excluded evidence of Bill's alleged abuse of Gail when determining maintenance payments.*

¶57    If a district court finds no clearly erroneous findings of fact, and the conclusions of law are correct, it must review a standing master's determination of maintenance payments for an abuse of discretion. Charter Order at 13-14. We review a district court's division of property and award of maintenance for an abuse of discretion absent clearly erroneous findings. *Jackson*, ¶ 9. In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice. *Jackson*, ¶ 9.

¶58    "The maintenance order must be in amounts and for periods of time that the court considers just, *without regard to marital misconduct*." Section 40-4-203(2), MCA (emphasis added). However, "a distinction exists between awarding a larger portion of the marital estate in order to penalize marital misconduct, and, on the other hand, considering the medical and financial consequences of marital abuse in the allocation of the marital estate." *In re Fenzau*, 2002 MT 197, ¶ 26, 311 Mont. 163, 54 P.3d 43.

¶59    Gail argues that the Standing Master should have allowed her to testify to Bill's alleged role in causing her physical and emotional limitations, citing *Fenzau*, ¶ 26. Gail asserts that this was admissible evidence of her "physical and emotional condition," a factor that must be considered when determining maintenance payments under § 40-4-203(2)(e), MCA. Bill argues that any evidence of his alleged abuse was properly excluded, also citing *Fenzau*, ¶ 26. Gail concedes that she was allowed to testify as to her physical and emotional limitations and challenges. Because maintenance orders must be determined "without regard

21

to marital misconduct" under § 40-4-203(2), MCA, and Gail was permitted to testify about her current conditions, we conclude the Standing Master did not abuse her discretion by excluding the evidence of Bill's alleged role in causing Gail's limitations and challenges. The District Court in turn did not abuse its discretion by adopting the Report which excluded the evidence of Bill's alleged abuse.

## CONCLUSION

¶60 The District Court erred by failing either to rule on Gail's motions, including her Motion for Maintenance, or otherwise to recommit the matter to the Standing Master with instructions to rule on these motions. The District Court erred by adopting the Report to the extent the Standing Master's conclusions of law failed to properly consider Gail's contributions to the marriage as a homemaker and her qualification for maintenance payments. The District Court was within its discretion to adopt the Report's exclusion of evidence of Bill's alleged abuse of Gail because the Standing Master properly considered the medical and financial consequences of the alleged abuse.

¶61 Reversed and remanded for proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE