Justice Laurie McKinnon delivered the Opinion of the Court.
¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.
¶ 2 Nikki Zelenka, formerly known as Nikki Rorabaugh (Nikki), appeals an order from the Eighteenth Judicial District Court, Gallatin County, adopting the Standing Master's findings of fact, conclusions of law, and a final decree of dissolution (Final Decree) of her marriage with Jason Rorabaugh (Jason). We affirm.
¶ 3 Nikki and Jason married in 1994. They had four children while married. During their marriage, Jason had a bachelor's degree and worked as a Petroleum Division Manager at Rocky Mountain Supply, earning approximately $80,000 per year. Nikki also had a bachelor's degree, but she primarily worked as a stay-at-home mother, homemaker, and homeschool teacher for the parties' children. Around 2009, Nikki began attending graduate school full-time to obtain her Master's Degree in Health and Human Development.
¶ 4 Nikki and Jason separated in March 2010. Jason moved out of the marital home and into a condominium the parties purchased. Both parties agreed their marriage was irretrievably broken, so in September 2011, Jason filed a petition for dissolution of their marriage. At that time, the parties' major assets were the marital home, the condominium, and Jason's 401(k) retirement account. After the parties' separation, Jason continued to support Nikki and the children by depositing his paychecks into the parties' joint bank account, and Nikki paid the marital home mortgage and other expenses using funds from the account. In October 2011, Jason discontinued depositing his paychecks into the joint account, began paying the marital home mortgage and a few other expenses himself, and elected to directly pay Nikki $1,000 per month.
¶ 5 From there, the matter quickly became contentious. In December 2011, Nikki filed a motion for temporary family support requesting that Jason pay her $3,200 per month. The Standing Master held a hearing in August 2012 to address Nikki's motion. During the hearing, the Standing Master asked each party to later follow up and submit proposed financial distribution plans. She also encouraged the parties to sell the marital home and take other measures to reduce their monthly expenses, stating: "The reality is the parties are split, they're separate, they have four children, their lifestyle is not going to be the same. And the sooner everybody accepts that, then the more likely it is that we can move forward in this case."
¶ 6 After the parties submitted their proposed financial distribution plans, the Standing Master did not rule on Nikki's motion for temporary family support. Nikki subsequently asked Child Support Enforcement Division (CSED) to calculate child support. In August 2013, CSED entered a final agency decision requiring Jason to pay monthly child support of $1,892. CSED's decision also provided that after Nikki graduated with her master's degree, in January 2014 Jason's support requirement would decrease to $1,555 per month.
¶ 7 In December 2013, the Standing Master held a three-day trial regarding the dissolution of the parties' marriage. After trial, the matter lingered, unresolved, for well over three years until the Standing Master issued the Final Decree in June 2017. The Final Decree evenly divided the marital home, the condominium, and Jason's 401(k) retirement account between the parties according to the assets' values at the time of the parties' dissolution; held each party liable for liens against the parties' real property filed under their individual names; held each party liable for one half of Nikki's student loan debt; generally held each party solely liable for his or her own individual debts incurred after March 2010; declined to award maintenance to either party; held each party liable for their own attorney fees; required each party to begin maintaining his or her own health insurance coverage; declined to require either party to pay back their children for amounts taken from the children's funds to cover family expenses; and was "dispositive of all other pending motions."
¶ 8 Nikki filed several objections to the Standing Master's Final Decree of Dissolution, and the District Court held a hearing on Nikki's objections in October 2017. The District Court subsequently overruled Nikki's objections and adopted the Standing Master's Final Decree in its entirety. Nikki then filed a motion to reopen the case to admit additional evidence regarding the parties' finances. The District Court denied Nikki's motion. Nikki appeals.
¶ 9 Jason argues Nikki's appeal is untimely. M. R. App. P. 4(5)(a)(i) provides that in civil cases, the notice of appeal is timely only when a party files it within thirty days of the entry date of the order from which the appeal is taken. Nevertheless, if either party timely files a motion to amend or make additional findings of fact under M. R. Civ. P. 52(b) or to alter or amend judgment under M. R. Civ. P. 59, the time for appeal runs instead from the entry date of the order granting or denying the motion. M. R. App. P. 4(5)(a)(iv). To identify which motion a party intended to present, we "look to the substance of a motion, not just its title...." In re Marriage of Holloway , 2000 MT 104, ¶ 13, 299 Mont. 291, 999 P.2d 980 (quoting Miller v. Herbert , 272 Mont. 132, 136, 900 P.2d 273, 275 (1995) ).
¶ 10 The District Court issued its order adopting the Standing Master's Final Decree on October 23, 2017. On November 6, 2017, Nikki filed a motion titled "Respondent's Motion and Brief to Reopen Case for Taking of Further Financial Evidence and Testimony, and Request for Hearing on the Financial Matters Noted Herein, Prior to Entering Final Judgement [sic] (and Accompanying Affidavit and Exhibits)." The title of Nikki's motion neither asked the District Court to amend or make additional findings of fact nor to alter or amend the judgment. Quite evident through the substance of her motion, however, is Nikki's intent for the District Court to make additional findings of fact in order to amend the final judgment. See M. R. Civ. P. 52(b), 59. Therefore, Nikki's motion extended her allotted time for filing a notice of appeal. After the District Court denied her motion on December 4, 2017, she had thirty days to file a notice of appeal. See M. R. App. P. 4(5)(a)(i). She met this requirement, filing her notice on January 3, 2018.
¶ 11 Nikki claims the Standing Master abused her discretion by failing to issue a written order granting or denying Nikki's motion for temporary family support. She also claims the Standing Master abused her discretion by denying Nikki's requests that Jason pay for spousal maintenance, Nikki's attorney fees, and Nikki's continued health insurance coverage. We review "a district court's decisions de novo to determine whether it applied the correct standard of review to a master's findings of fact and conclusions of law." Patton v. Patton , 2015 MT 7, ¶ 17, 378 Mont. 22, 340 P.3d 1242. We apply the same standard of review to an adopted standing master's report that we do to any other district court order. Patton , ¶ 17. Section 40-4-202, MCA, which governs the distribution of a marital estate, vests a district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. Section 40-4-110, MCA, allows the district court, after considering the parties' financial resources, to order a party to pay a reasonable amount of the opposing party's attorney fees. We initially review a district court's division of marital property and maintenance award to determine whether the findings of fact upon which the division and maintenance award are based are clearly erroneous. Jackson v. Jackson , 2008 MT 25, ¶ 9, 341 Mont. 227, 177 P.3d 474. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." Jackson , ¶ 9 (quoting In re Marriage of Gerhart , 2003 MT 292, ¶ 15, 318 Mont. 94, 78 P.3d 1219 ). Absent clearly erroneous findings, we review marital property divisions and maintenance awards for abuse of discretion, determining "whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice." Jackson , ¶ 9.
¶ 12 The Standing Master failed to rule on Nikki's December 2011 motion for temporary family support for well over five years-only in June 2017 did the Final Decree dispose of it along with "all other pending motions." Nevertheless, the Standing Master found that between December 2011 and July 2013, although Jason quit depositing his paychecks into his and Nikki's joint bank account, Jason continued paying the $1,081 mortgage on the marital residence and began paying Nikki $1,000 per month directly. In July 2013, CSED issued a temporary order for Jason to begin paying Nikki $1,892 per month in child support, which it reduced to $1,555 per month in January 2014 after Nikki completed graduate school and could begin earning full-time income. The Standing Master's Final Decree ordered CSED to issue a final child support and medical support order in the case, and the Standing Master ultimately did not order Jason to pay Nikki retroactive child support and maintenance.
¶ 13 Nikki graduated with her master's degree in December 2013, and the Standing Master found she was capable of meeting her reasonable needs through employment. Nikki incurred student loan debt while pursuing her degree, and the Standing Master found Nikki had incurred the debt to increase her earning potential, which ultimately benefited the family. Nikki claimed she had suffered several physical and mental injuries over the course of the proceedings that would require continuous medical treatment and affected her ability to work. Nevertheless, in December 2015, Nikki informed the Standing Master that while she was permanently partially disabled, with some accommodations, she was capable of working full-time. Therefore, the Standing Master concluded each party would assume one half of Nikki's student loan debt, Nikki would not receive spousal maintenance, each party would pay his or her own attorney fees, and each party would pay for his or her own future health insurance coverage.
¶ 14 In October 2017, after Nikki objected to the Standing Master's Final Decree, the District Court held a hearing to allow Nikki to present oral argument supporting her objections. Nikki raised the same concerns to the District Court that she had raised to the Standing Master and provided no additional reasoning supporting her requests for retroactive child support, maintenance, attorney fees, and health insurance coverage.
¶ 15 The record supports the Standing Master's factual findings, and they are not clearly erroneous. Likewise, the Standing Master did not abuse her discretion when she decided not to award Nikki retroactive child support. The record shows that Jason continued supporting Nikki and the children from December 2011 through July 2013 by making mortgage payments on the marital residence, by paying for some other basic expenses, and by paying $1,000 per month directly to Nikki. The record does not indicate Jason failed to make payments required by CSED's support orders from July 2013 onward. Nikki argues the value of payments she received was inadequate, but we agree with the Standing Master's observation regarding the parties' post-separation finances: "The reality is the parties are split ... their lifestyle is not going to be the same." Accordingly, although the Standing Master's Final Decree was profoundly delayed, her decision not to award retroactive child support was not an abuse of discretion based on Jason's mortgage payments, direct payments to Nikki, and later CSED-ordered child support payments.
¶ 16 Furthermore, the Standing Master evenly divided the parties' major assets-the marital residence, the condominium, and Jason's 401(k) retirement account-and required each party to pay for one half of Nikki's student loan debt. Nikki graduated with her master's degree and is capable of full-time employment. Accordingly, based on the parties' post-dissolution financial resources and Nikki's employment potential, the Standing Master did not abuse her discretion by declining to award Nikki spousal maintenance, attorney fees, and health insurance coverage.
¶ 17 Nikki also claims the District Court abused its discretion when it denied her post-dissolution motion to reopen the case to admit further financial evidence. Nikki argues the District Court should have reopened the case to receive information regarding her post-trial debt and the liens Jason's parents and his attorney placed on the parties' marital home and condominium. "Whether to reopen a case for the introduction of further evidence after the case has been submitted to the court is within the discretion of the trial court. Its ruling, upon the request to reopen, will not be disturbed by this Court unless there has been a clear abuse of discretion." Stavenjord v. Mont. State Fund , 2003 MT 67, ¶ 15, 314 Mont. 466, 67 P.3d 229.
¶ 18 Although well over three years elapsed between trial in December 2013 and the Standing Master's Final Decree in October 2017, the Standing Master did reopen the case for disclosure of updated financial information in May 2015. The parties supplied the updated information, and the Standing Master considered it alongside the additional information both parties filed between December 2013 and October 2017 before issuing the Final Decree. The Final Decree divided the marital home, condominium, and 401(k) retirement account according to their values as of the Final Decree date (October 2017), not the trial date (December 2013). The Final Decree also evenly divided Nikki's student loan debt, generally held each party responsible for their own debts, and held that any individual party's debt secured by a lien against the parties' real property "should be satisfied from the individual's marital portion of the equity in the real property awarded to each." Therefore, the liens Jason's parents and attorney placed on the parties' real property had no effect on Nikki's equity in the properties. Before adopting the Standing Master's Final Decree, the District Court heard argument from Nikki regarding the liens and her post-trial debt. The District Court did not abuse its discretion by denying her motion to reopen the case.
¶ 19 Finally, Nikki argues the District Court abused its discretion by failing to require the parties to reimburse their children for amounts the parties borrowed from the children's funds. A district court may only modify a standing master's finding of fact or conclusion of law if one of the parties files a "specific objection." Section 3-5-126(2), MCA ; In re Marriage of McMichael , 2006 MT 237, ¶ 15, 333 Mont. 517, 143 P.3d 439 ; Beals v. Beals , 2013 MT 120, ¶ 12, 370 Mont. 88, 300 P.3d 1158. The Standing Master held neither party responsible for repaying the children for any amounts borrowed from the children's funds. However, Nikki failed to specifically object to that decision when she filed her objections to the Final Decree with the District Court. Therefore, we will not decide the issue for the first time on appeal.
¶ 20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.
¶ 21 Affirmed.
We concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
JIM RICE, J.