FILED

August 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0018

DA 15-0018

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 236N

IN RE THE MARRIAGE OF:

STEVEN GEORGE CARR,

Petitioner and Appellee,

v.

DEANNE RENEE DODSON-CARR,

Respondent and Appellant.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-09-570A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kai Groenke, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

For Appellee:

Katherine P. Maxwell, Maxwell Law, PLLC, Kalispell, Montana

Submitted on Briefs:  June 10, 2015
Decided:  August 11, 2015

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      In 2011, the Eleventh Judicial District Court, Flathead County, issued its Findings of Fact, Conclusions of Law and Decree of Dissolution, dissolving the marriage of the parties, dividing property, and imposing orders of maintenance and child support.  In 2014, pursuant to cross-motions, the District Court entered an order modifying the Decree in several respects.  Dodson-Carr appeals.  We affirm in part and reverse and remand in part.

¶3      Steven George Carr and Deanne Renee Dodson-Carr married in 1999 and had a daughter in 2000.  Dodson-Carr, currently 56 years old, is a disabled retired detention officer.  Carr, currently 63, is a retired California police officer who served 27 years on the force before retiring in May 2004.  During his employment, he earned a pension administered through California Public Employee Retirement System (CalPERS) and subject to California Public Employees Retirement Law (PERL).  The couple relocated to Montana in 2004 and separated on December 24, 2008.  Carr sought dissolution of the marriage in July 2010.

¶4      The District Court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution on September 22, 2011.  The court awarded Dodson-Carr $500/month in maintenance and $724/month in child support.  Additionally, the court stated that "It is . . . reasonable and equitable that [Carr's] retirement be divided 50% to [Dodson-Carr] and 50%

2

to [Carr] by means of a [qualified domestic relations order] QDRO." Carr promptly sought to have the judgment amended but his motion was deemed denied when the District Court did not rule on it within 60 days. Carr filed a notice of appeal on January 3, 2012, but we dismissed the appeal as untimely.

¶5 In April 2012, Dodson-Carr moved for entry of a QDRO asserting that Carr had not yet transferred 50% of his monthly retirement benefit to her. On May 9, 2012, the Court issued the QDRO in which it ordered:

> [Carr] ("Member") and [Dodson-Carr] ("Nonmember Spouse") have acquired a community interest in the Member's monthly retirement benefits attributable to periods of service in the System from the Date of Marriage up to the . . . Date of Retirement . . . . The [c]ourt allocates and awards to the Nonmember Spouse 50% interest in any and all of the Member's "retirement benefits."

This QDRO indicated that Dodson-Carr was to begin receiving her portion of Carr's retirement benefits on October 1, 2011. The court also expressly reserved jurisdiction over the subject matter of the order and the marital dissolution action.

¶6 In June 2012, the Court issued an amended QDRO stating that Dodson-Carr would begin receiving her portion of the retirement benefits "as son [sic] as administratively practicable following the date the Administrator determines that the Order is acceptable under the PERL." The District Court again expressly reserved jurisdiction over the subject matter of the amended order. CalPERS began making monthly payments to Dodson-Carr in the amount of $2,176.13 in July 2012.

¶7 On July 24, 2012, Carr moved to modify child support and maintenance alleging that payment in accordance with the Decree and the QDRO would render him penniless. Dodson-Carr filed an affidavit disputing much of what Carr claimed in his motion.

¶8 In April 2013, Carr filed a motion for contempt asserting that Dodson-Carr was not complying with the District Court's Decree vis-à-vis visitation. Dodson-Carr countered with her motion for contempt alleging Carr's failure to comply with the payment arrangements set forth in the Decree. The parties attended mediation on May 13, 2013, but were unable to resolve their differences.

¶9 The District Court conducted a hearing on September 4, 2013, to address the contempt motions and Carr's motion to modify child support and maintenance. In its December 15, 2014 Findings of Fact, Conclusions of Law and Order, the court concluded that it had jurisdiction to amend the Decree and QDRO and that substantial and continuing changing circumstances made the earlier child support and maintenance arrangements unconscionable. It made the following relevant findings for the first time:

> (1) Carr's gross retirement amount of $4,267/month was consistently reduced for taxes, health insurance for himself and his child, and contractually-obligated repayments to PERS, leaving a monthly net amount of $2,662.

> (2) At the time of dissolution, the court did not allocate marital debt to the parties and Carr has since paid off substantial amounts of marital debt.

> (3) Following an injury that occurred during part time employment in mid-2011, Carr became disabled and unemployable for more than a year. Currently at 93% permanent disability, Carr subsequently was able to acquire some part time and seasonal work but such work is low paying, inconsistent, and unreliable.

4

(4)     The worksheets attached to the Decree reflected Dodson-Carr's $3,120 monthly income from social security and her pension but did not reflect her monthly income based upon Carr's payment of child support ($724), maintenance ($500), and one-half of his gross retirement benefit ($2,133). The worksheets further may not have included the monthly amount Dodson-Carr received from social security for their child. Inclusion of these monetary monthly receipts rendered an annual income for Dodson-Carr of approximately $80,000, all but $6,000 of which would be tax free.

(5)     Carr's monthly net pension of $2,662 provided the majority of Carr's income and provided Carr with an annual income of approximately $32,000. Inconsistent part time work and other small monetary injections provided a slightly greater monthly income, but payment to Dodson-Carr of $2,176/month left Carr with a grossly inadequate cash flow to meet his minimum monthly living expenses of approximately $2,489.

The District Court overturned its 2011 50/50 distribution of Carr's pension and ordered that Dodson-Carr receive $370 per month from Carr's pension for the remainder of her life, with cost of living increases, in exchange for the originally-ordered $500 monthly maintenance award for five years. It further ordered the parties to exchange financial affidavits to allow for a child support modification. The court denied Dodson-Carr's contempt motion and Carr withdrew his contempt motion. In January 2015, the District Court modified the child support arrangement.[1]

¶10     Dodson-Carr appeals, arguing that the District Court (1) did not have jurisdiction to modify the final decree; (2) abused its discretion in determining that changed circumstances existed that rendered the original financial arrangements between the parties unconscionable; and (3) erred in modifying maintenance retroactive to the date of the Decree. Moreover, she asserts that the court's findings of fact are clearly erroneous.

---

[1]  The new child support arrangement is not being appealed.

¶11 We review a district court's findings of fact regarding division of marital property, child support, and maintenance awards to ascertain whether they are clearly erroneous. *Patton v. Patton*, 2015 MT 7, ¶ 18, 378 Mont. 22, 340 P.3d 1242 (internal citation omitted). Absent clearly erroneous findings, we will affirm a district court's division of property and maintenance award unless there was an abuse of discretion. *Patton*, ¶ 19.

¶12 Section 40-4-135(1), MCA, allows a court to set aside a final judgment for a mistake or on other equitable grounds. Additionally, § 40-4-208, MCA, provides in relevant part:

> (1) Except as otherwise provided in 40-4-201(6), a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification.
> . . .
> (2)(b) Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
> (i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable.
> . . .
> (3) The provisions as to property disposition may not be revoked or modified by a court except:
> . . .
> (b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

¶13 Applying § 40-4-135(1), MCA, we conclude the District Court did not err in modifying the maintenance provisions in the Decree and the QDRO based upon mistake. The worksheets relied upon by the District Court in preparing the original decree were incomplete and misleading and as a result reflected an unfair disparity in the parties' incomes. Additionally, the language of the Decree was ambiguous and subject to multiple interpretations. As noted above, the Decree expressly stated that Dodson-Carr acquired a community interest in Carr's monthly retirement benefits from the date of their marriage

6

until the date of Carr's retirement. Notwithstanding this temporal limitation, the District Court failed to calculate the amount of funds in Carr's retirement account that accrued during the marriage and instead premised the benefit award to Dodson-Carr upon the entire balance of Carr's retirement account. This was error. Moreover, the court did not specify whether Dodson-Carr's monthly award would be derived from Carr's net or gross monthly benefit. These errors justify modification of the maintenance award under § 40-4-135(1), MCA.

¶14 Applying § 40-4-208(2)(b)(i), MCA, the record supports Carr's request for modification of maintenance based upon his substantial and continuing changed circumstances including his post-Decree injury leaving him with a 93% disability and limitations on prospective employment. Additionally, these same circumstances justify the District Court's reopening and modification of the property disposition under § 40-4-208(3)(b), MCA. Requiring Carr to transfer one-half of his gross monthly retirement to Dodson-Carr rendering him incapable of meeting his minimum monthly expenses makes the original award unconscionable.

¶15 Lastly, Dodson-Carr claims that the District Court erred when it modified the maintenance agreement because the modification effectively applied retroactively to the date of the original Decree rather than to the date of the motion to modify. As noted above, § 40-4-208(1), MCA, provides (with some inapplicable exceptions) that a maintenance decree may be modified by a court only as to installments accruing subsequent to actual notice to the parties of the motion for modification, which in this case was July 24, 2012.

¶16 It is undisputed that Carr did not pay Dodson-Carr monthly maintenance payments of $500 between October 1, 2011, and July 24, 2012. This failure to pay resulted in a $5,000

7

maintenance arrearage as of the time the motion to modify was filed. The District Court ultimately concluded that later payments from Carr's retirement account to Dodson-Carr totaling approximately $35,000 offset these arrearages and Carr was not required to pay them. This was an erroneous conclusion. Under the statute the maintenance arrearages that accrued before July 2012 remain payable by Carr. We therefore remand to the District Court for correction of this error.

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

**CONCLUSION**

¶18    For the foregoing reasons, we affirm the District Court's order granting Carr's motion to modify maintenance but remand for correction pertaining to maintenance arrearages accrued during the first ten months following dissolution.

/S/ PATRICIA COTTER

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE