FILED

03/06/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0374

DA 17-0374

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 37

IN RE THE MARRIAGE OF:

JOHN S. HOLLAMON,

   Petitioner and Appellant,

  v.

BEVERLY P. HOLLAMON,

   Respondent and Appellee.

APPEAL FROM:  District Court of the Fourth Judicial District,
       In and For the County of Missoula, Cause No. DR-14-14
       Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     P. Mars Scott, P, Mars Scott Law Offices; Missoula, Montana

   For Appellee:

     Dennis E. Lind, Datsopoulos, MacDonald & Lind; Missoula, Montana

        Submitted on Briefs: February 14, 2018

           Decided: March 6, 2018

Filed:

          _____
             Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 John Hollamon (John) appeals the May 26, 2017 order of the Fourth Judicial District Court, Missoula County, distributing the marital assets upon dissolution and awarding Beverly Hollamon (Beverly) maintenance. We affirm.

¶2 We restate the issues on appeal as follows:

> 1. *Whether the District Court erred in awarding Beverly maintenance.*
>
> 2. *Whether the District Court erred in including John's investment accounts in calculating the division of the marital estate.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 This case involves the dissolution of a long-term marriage. Beverly and John married in October 1995. John filed for dissolution in January 2014. The case was tried in June 2015 before Standing Master Brenda Desmond. Following a bench trial, the Standing Master issued a 34-page Findings of Fact, Conclusions of Law, and Decree dissolving the marriage, distributing assets and awarding maintenance to Beverly. John then appealed the Standing Master's order to this Court. This Court dismissed John's appeal because he failed to comply with § 3-5-126(2), MCA, requiring him to first seek review by the District Court. John subsequently filed objections to the Standing Master's order with the District Court. Following review of the record and additional hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Order in May 2017. The District Court reduced the amount and duration of the maintenance award and affirmed the Standing Master's equitable division of the marital estate.

2

¶4 At the time of the dissolution, John was 64 years old and Beverly was 60 years old. They had been married nearly two decades. Prior to moving to Montana, the parties resided in South Carolina. When the parties resided in South Carolina, Beverly worked full-time in the banking industry earning approximately $49,000 per year plus benefits and John worked managing the family dairy farm and operating a small business. John had vacationed in Montana and dreamed of living here. To pursue this dream, John and Beverly moved to Montana in 2006. After relocating to Montana, Beverly was not able to secure employment at the earnings or benefit level she did prior to the move. Beverly obtained part-time employment in Granite County as a substitute teacher and deputy clerk of court. Additionally, John agreed to provide Beverly $1,000 per week to cover her expenses and in partial replacement of her previous income and benefits and Beverly agreed to continue to provide bookkeeping assistance for John's commodities business and billing for Hollamon Ranch, Inc. John paid Beverly these funds from 2006 through to the time of filing for dissolution. As determined by the Standing Master and confirmed by the District Court, by the time of dissolution, the parties had acquired significant property with a net marital estate of $5,747,302. The District Court adopted the Standing Master's findings with regard to an equitable distribution of the property awarding approximately 70% of the marital estate to John and 30% to Beverly.

¶5 The Standing Master included John's separate investment accounts when calculating the marital estate. John had three investment accounts with a balance of over $1,500,000. The Standing Master awarded John the investment accounts after specific distributions were made to Beverly. In Findings of Fact No. 118, the Standing Master

3

stated, "all three accounts are held separately by John. John should retain these accounts as his separate accounts." The District Court affirmed, including John's investment accounts in the marital estate, and concluding "each party received property and cash proportionately to arrive at an equitable division of the marital estate."

¶6 The Standing Master awarded Beverly maintenance of $4,000 per month for a period of 60 months. Upon review of the Standing Master's order, the District Court reduced the maintenance award to Beverly to $3,000 per month for a period of 24 months. The District Court determined the Standing Master underestimated both Beverly's expenses and income. The District Court adjusted the maintenance based on Beverly's income generating property, her ability to remain in the workforce until retirement, and the fact she no longer had monthly vacation expenses as she had moved back to South Carolina. John appeals the award of maintenance and the inclusion of his investment accounts in the calculation of the marital estate.

## STANDARD OF REVIEW

¶7 In a case tried before a standing master, "we apply the same standard of review to an adopted master's report that we do to any other district court order." *Patton v. Patton*, 2015 MT 7, ¶ 17, 378 Mont. 22, 340 P.3d 1242. We review the district court's findings of fact in a dissolution proceeding to determine whether they are clearly erroneous. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *Crilly*, ¶ 10.

4

¶8      Section 40-4-202, MCA, governs the distribution of a marital estate. The factors listed in § 40-4-202, MCA, must be considered in the making of the district court's findings and conclusions and there must be competent evidence presented on the values of the property. *In re Marriage of Funk*, 2012 MT 14, ¶ 7, 363 Mont. 352, 270 P.3d 39. Section 40-4-202, MCA, vests the district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law are correct. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *Funk*, ¶ 6.

¶9      The standard of review for maintenance awards is whether the district court's findings are clearly erroneous. The amount and period of maintenance must be determined in accordance with § 40-4-203(2), MCA. *In re Marriage of Haines*, 2002 MT 182, ¶ 15, 311 Mont. 70, 53 P.3d 378.

**DISCUSSION**

¶10     *1. Whether the District Court erred when it awarded Beverly maintenance.*

¶11     John asserts the District Court erred in awarding Beverly maintenance when it did not first determine John's ability to pay maintenance. John further contends the District Court failed to consider whether John can financially meet his own needs before awarding Beverly maintenance.

¶12     The amount and period of maintenance must be determined in accordance with § 40-4-203(2), MCA. *Haines*, ¶ 15. Section 40-4-203(2), MCA, provides that when

5

determining whether to grant a maintenance award the court must consider relevant factors including:

>(a) the financial resources of the party seeking maintenance, including marital property apportioned to that party, and the party's ability to meet the party's needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>(c) the standard of living established during the marriage;
>(d) the duration of the marriage;
>(e) the age and the physical and emotional condition of the spouse seeking maintenance; and
>(f) the ability of the spouse from whom maintenance is sought to meet the spouse's own needs while meeting those of the spouse seeking maintenance.

Although a district court must consider each of the factors listed in § 40-4-203, MCA, the court need not make specific findings of fact regarding each factor, so long as this Court can determine the trial judge actually considered these factors. *In re Marriage of Payer*, 2005 MT 89, ¶ 12, 326 Mont. 459, 110 P.3d 460 (citations omitted).

¶13 We conclude substantial evidence supported the District Court's maintenance award. The Standing Master's findings, which were adopted by the District Court, along with the District Court's findings demonstrate the District Court fully and carefully considered the relevant factors pursuant to § 40-4-203, MCA. The Standing Master's order meticulously detailed the parties' ages, health conditions, duration of marriage, standard of living enjoyed during the marriage, the assets of the parties, and their equitable distribution between the parties. The Standing Master specifically addressed John's ability to meet his own needs while meeting the maintenance requirement. The Standing Master found,

6

"During this proceeding, John had withdrawn funds from his investment accounts to make the Court-ordered support payments to pay Beverly. . . . [H]is income for purposes of income tax liability had been zero in most recent years, he testified that during the tax year 2013 his total income including capital gains, dividends, lease income and Social Security was $111,000. John has and continues to have a large cash flow." Further, the Standing Master found John has minimal monthly fixed expenses and minimal debt. In regard to Beverly, the Standing Master found that Beverly required maintenance for a reasonable amount of time to obtain employment, including training, if necessary.

¶14    The District Court's order reduced the amount and duration of maintenance awarded by the Standing Master, but did not alter the Standing Master's findings supporting an award of maintenance. The District Court considered and detailed Beverly's financial resources, her earning ability, her monthly expenses, her reduced need for vacation funds with her return to South Carolina, and the cost of her retraining to enter the work force. The District Court further considered income producing property distributed to Beverly, which was not addressed by the Standing Master in the original maintenance award. The District Court also considered John's ability to pay maintenance while meeting his own needs. Specifically, the District Court noted that financially John was in a superior position to Beverly by receiving the majority of the marital estate. We conclude the District Court correctly considered all the relevant factors set forth in § 40-4-203, MCA, in the award of maintenance to Beverly. The District Court's award of maintenance was supported by substantial evidence and was not clearly erroneous.

¶15 *2. Whether the District Court erred in including John's investment accounts in calculating the division of the marital estate?*

¶16 John argues the District Court misapprehended the evidence and it was error for the District Court to include John's investment accounts in the calculation of the marital estate. John asserts nearly all the property of the marital estate was obtained with proceeds from John's premarital property and inheritance and, therefore, John's "separate" investment accounts should have been separated from the marital estate calculations.

¶17 In a dissolution proceeding, § 40-4-202, MCA, governs the distribution of a marital estate. Pursuant to *Funk*, § 40-4-202, MCA, obligates a court,

> to equitably apportion between the parties all assets and property of either or both spouses, regardless of by whom and when acquired. This directive applies to all assets, including pre-acquired property and assets acquired by gift, bequest, devise or descent. The party claiming ownership of the pre-acquired, bequested or gifted property is entitled to argue that it would be equitable to award him or her the entirety of such property. Accordingly, when distributing pre-acquired property or assets acquired by gift, bequest, devise or descent, the court must also consider the contributions of the other spouse to the marriage, and take account of the three factors set forth in § 40-4-202(1)(a)-(c), MCA.

*Funk*, ¶ 19.

¶18 When apportioning the marital estate between the parties, § 40-4-202, MCA, requires the court to "consider the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income." Section

8

40-4-202(1), MCA, provides "the court shall consider those contributions of the other spouse to the marriage, including: (a) the nonmonetary contribution of a homemaker; (b) the extent to which the contributions have facilitated the maintenance of the property; and (c) whether or not the property division serves as an alternative to maintenance arrangements." Thus, the relevant inquiry in a dissolution proceeding is "whether the district court adequately considered all of the relevant facts of the particular case; whether it considered the statutory factors; and then whether it equitably distributed all property and assets accordingly." *Funk*, ¶ 15.

¶19    John's interpretation of the Standing Master's findings is not persuasive nor supported by the evidence. The Standing Master thoroughly and meticulously identified and valued all of the assets held by the parties, whether held individually and/or jointly, and whether acquired before or during the marriage by gift, inheritance, or otherwise. After doing so, the Standing Master indicated how the assets should be equitably apportioned between John and Beverly separately. In doing so, the Standing Master apportioned John his investment accounts, stating "all three accounts are held separately by John. John should retain these accounts as his separate accounts." John argues the Standing Master's label of the investment accounts as "held separately by John" required the District Court to exclude such accounts from the marital estate. However, the Standing Master and the District Court recognized such an interpretation would be in direct conflict with § 40-4-202, MCA, and this Court's decision in *Funk*. Thus, John's investment accounts were correctly included in the marital estate pursuant to Montana law.

¶20    From review of the record, the Standing Master thoroughly performed the analysis required by § 40-4-202, MCA.  Pursuant to § 40-4-202, MCA, the Standing Master included all assets, including pre-acquired property and assets acquired by gift, bequest, devise or descent into the marital estate.  The Standing Master noted that John can trace most of the marital assets, including his investment accounts, through his family's property and subsequent acquisitions.  The Standing Master found this to be a relevant factor when considering the equitable distribution of the marital estate, but specifically noted this factor was not the determining factor. The other factors set forth § 40-4-202(1)(a)-(c), MCA, weighed against John's proposed distribution.

¶21    The Standing Master and the District Court thoroughly considered the factors set forth in § 40-4-202(1)(a)-(c), MCA.  Based on the evidence presented at trial, the Standing Master specifically found:

> Beverly contributed to the marriage in a number of ways, both financial and nonfinancial, as a homemaker, caregiver, as a bookkeeper, and office assistant, rental property co-manager and outdoor maintenance and upkeep assistant.  Beverly's contributions facilitated the maintenance of the marital property, both through her financial contributions and her assistance in maintaining the homes they lived in prior to the move to Montana as well as the marital residence in Montana where John worked.

The Standing Master considered all the factors set forth in § 40-4-202(1)(a)-(c), MCA, and the specific facts of this case and determined an equitable distribution requires an allocation of approximately 30% of the marital estate along with an award of maintenance to Beverly. Upon review of the record, the District Court concluded the Standing Master's equitable division of property was appropriate.  The District Court further reaffirmed it was appropriate and reasonable under § 40-4-202, MCA, that Beverly should be apportioned

10

approximately 30% of the marital estate for her financial and nonfinancial contributions to the marital estate during the marriage. The Standing Master and the District Court equitably distributed all property and assets of the marital estate considering all of the relevant facts, statutory factors and case law.

¶22 We find John's argument that the Standing Master and District Court ordered "him to deplete the principal in the [investment] accounts to pay maintenance to Beverly" disingenuous. John's obligation to pay maintenance does not prescribe it must come from a particular source. John is not limited to his investment income from which to pay maintenance. The Standing Master merely recognized John had been withdrawing funds from his investment accounts to make the Court-ordered support payments to pay Beverly maintenance. However, neither the Standing Master, nor the District Court required him to pay maintenance from his investment accounts. This characterization is not supported by the evidence or the District Court's findings. The Standing Master and the District Court applied the criteria of § 40-4-203, MCA, appropriately finding Beverly was in need of maintenance to meet her needs and to retrain to enter the work force, and John had the financial ability, through his work and use of assets apportioned to him, to pay the maintenance. Therefore, we conclude the District Court's equitable apportionment of the marital assets between the parties is supported by substantial evidence.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm the District Court's award of maintenance to Beverly. We further affirm the District Court's inclusion of John's investment accounts in

11

the marital estate and conclude the District Court's equitable division of the marital estate was supported by substantial evidence.

¶24    Affirmed.


                                        /S/ INGRID GUSTAFSON


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE