FILED

04/21/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0374

DA 19-0374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 90

IN RE THE MARRIAGE OF:

TWILA RUIS, n/k/a TWILA JENSEN,

      Petitioner and Appellee,

  and

DAVID RUIS,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DR-14-661(B) Honorable Robert B. Allison, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Sean R. Gilchrist, Johnson-Gilchrist Law Firm, P.C., Whitefish, Montana

      For Appellee:

          Peter F. Carroll, Attorney at Law, Kalispell, Montana

          Submitted on Briefs: February 12, 2020

          Decided: April 21, 2020

Filed:

                          _____
                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    David Ruis appeals the Eleventh Judicial District Court's post-judgment order requiring him to pay his ex-wife Twila Ruis (n/k/a Twila Jensen) a cash equalization payment plus interest in accordance with the court's earlier dissolution decree. David argues that the eventual sale of the parties' marital home rendered the cash equalization payment inequitable. David thus takes issue with the award of post-judgment interest on that payment amount. Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    David and Twila married in 2001. In September 2014, Twila filed a petition for dissolution of marriage. Prior to trial, the parties agreed to a proposed parenting plan and child support for their minor child. They were not able to reach agreement regarding the distribution of their marital assets and debts. The major asset in dispute—both in the District Court and on appeal—is the parties' Columbia Falls home ("12th Street Property" and "Property"), which each party requested. The parties agreed that the fair market value of the Property was $460,000. The District Court conducted a bench trial on May 17, 2016. On June 14, the court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution ("2016 Decree" or "Decree") awarding approximately fifty percent of the net marital estate to each party. The court awarded the 12th Street Property to David based in part on its findings that: David's siblings owned the adjoining property; David was employed and had family in the area; Twila had relocated with the parties' minor son to Williston, North Dakota, and ran a business there; and, based on testimony at trial,

2

David would be able to refinance the Property in his name. The court issued the following finding with respect to distribution of the 12th Street Property:

> 27. The Court further finds that David shall refinance the 12th Street Property in his sole name to provide Twila with the funds for her Cash Equalization Payment as set forth . . . below and remove Twila from the indebtedness within ninety (90) days from the date of this Decree. . . . David shall be solely responsible for the mortgage, real estate taxes, insurances, utilities, and any other expenses related to the 12th Street Property he is receiving herein. Payment in full of the Cash Equalization Payment, which shall continue as a lien against the real property until paid, shall be due 90 days from the date of this Decree, and if not paid by that date shall thereafter bear interest at the rate of 10% per annum until paid in full.

The court itemized and distributed the parties' assets in a spreadsheet attached to the Decree. Based on this and the agreed-upon value of the Property, the court calculated that David would owe Twila a cash equalization payment of $65,870.

¶3 The court also provided an option for Twila to purchase the property should David fail to obtain refinancing:

> 29. If David fails to obtain refinancing on the 12th Street Property . . . Twila shall have the option to purchase it within 90 days and David shall provide a properly executed quitclaim deed to [her attorney]. . . . The values and amounts set forth in these findings shall apply and the appropriate modifications shall be made to the spreadsheet exhibit to determine sums to be paid to the respective parties to equalize the division of the marital estate. Should Twila be unable to purchase the property within her 90 days, the same shall be listed on the market and sold in a commercially reasonable fashion, with both parties cooperating with that process.

The court ordered that, during the pendency of the sale, David "shall continue to have exclusive occupancy" and "continue to be solely responsible for monthly mortgage payments, insurances, real estate taxes, and all utilities" of the Property.

¶4     David was unable to refinance the 12th Street Property.  In a series of letters in September 2016, counsel for both parties discussed David's failure to refinance within the allotted ninety-day period and Twila's right to exercise her option to purchase and refinance the Property.  Twila never exercised the option.  The parties subsequently put the Property up for sale.  It finally sold on July 3, 2018, for less than $460,000; the proceeds were placed into Twila's attorney's trust account.

¶5     Twila filed a motion later that month requesting the release of funds.  The District Court issued an order stating only that David should not receive credit for the mortgage payments, HELOC payments, insurance, taxes, and repairs he made following the trial and that the funds held in trust should be distributed in accordance with the 2016 Decree.  Twila filed another motion to release funds in April 2019.  After briefing by the parties, the District Court issued its Order and Rationale, ordering David to pay Twila the originally determined cash equalization payment set forth in the 2016 Decree— $65,870—plus judgment interest.  This appeal followed.

**STANDARDS OF REVIEW**

¶6     This Court reviews a district court's division of marital property to determine whether the findings of fact upon which the division is based are clearly erroneous. *Jackson v. Jackson*, 2008 MT 25, ¶ 9, 341 Mont. 227, 177 P.3d 474.  A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made.  *Frank v. Frank*, 2019 MT 130, ¶ 11, 396 Mont. 123, 443 P.3d 527 (citation omitted).  Absent clear error, we will affirm a district court's division of marital

4

property unless the court abused its discretion. *Frank*, ¶ 11 (citing *Jackson*, ¶ 9). "In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Frank*, ¶ 11; *Jackson*, ¶ 9.

## DISCUSSION

¶7    *1. Did the District Court abuse its discretion when, in its 2019 Order and Rationale, it awarded Twila the cash equalization payment originally contemplated in the 2016 Decree even though David did not refinance and retain the 12th Street Property?*

¶8    David argues that the District Court abused its discretion when, in its 2019 Order and Rationale, it ordered David to provide Twila the cash equalization payment originally determined in the 2016 Decree. According to David, the $65,870 cash equalization payment was contingent upon his ability to refinance the 12th Street Property, which he was unable to accomplish. He argues that Twila now will receive two-thirds of the marital estate under the 2019 Order and Rationale and that this is inconsistent with the 2016 Decree, which required an equal distribution of the estate. Twila responds that David's interpretation of the 2016 Decree is flawed. She urges this Court to afford the District Court deference in interpreting its own earlier decree.

¶9    A district court has broad discretion to distribute marital property in a manner that is equitable to both parties. *See, e.g., Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126 (citation omitted). The court must reach an equitable distribution, not necessarily an equal one. *Richards*, ¶ 11 (citations omitted).

¶10    David argues that the 2016 Decree requires that the marital estate be distributed equally between the parties. He cites several cases concluding that a trial court abused its

5

discretion when the court found that a marital estate should be distributed equally but later distributed assets in an unequal fashion. *See Richards*, ¶ 31 (concluding that an award to one spouse of ten percent of the nearly $2 million value of the marital estate was not equitable under the circumstances); *In re Marriage of Kramer*, 177 Mont. 61, 67, 580 P.2d 439, 442 (1978) (court abused its discretion when it: awarded wife the marital home and all the furniture in it; required the husband to pay all debts and expenses associated with property, child support, and alimony; and awarded husband only one asset—a truck); *Kruse v. Kruse*, 179 Mont. 79, 85-86, 586 P.2d 294, 298 (1978) (court abused its discretion when, after finding that the marital estate should be divided equitably, it awarded wife one-half of the cost of acquiring the marital assets, not one-half of the fair market value, and awarded husband all assets acquired, his corporate interests, and appreciation of all assets); *In re Marriage of Berthiaume*, 173 Mont. 421, 424-25, 567 P.2d 1388, 1390 (1977) (court abused its discretion when it found that marital property should be "divided as equally as possible[]" but awarded husband well over ninety percent of the estate).

¶11    It is true, as David points out, that the spreadsheet the District Court incorporated into the 2016 Decree awarded fifty percent of the marital estate's net value to each party. But the Decree was based on the evidence presented at trial and the property's stipulated value at that time. The District Court found that "all of the net equity in the 12th Street Property is marital and subject to an equitable division between the parties." It did not promise equal distribution; it found that the cash equalization payment was "integral and

6

imperative to the fundamental concept of an equitable division of the marital estate." It based that payment on the parties' stipulated value of the Property at the time of trial.

¶12 The court had strong evidence, including testimony from a local bank loan officer, that David was pre-approved to refinance the Property. The District Court awarded David the 12th Street Property based on his own request and on his representations to the court that he could obtain the necessary refinancing. The District Court concluded that by seeking to have the Property awarded to him, David "ran certain risks[,]" including the possibility that he would be unable to refinance or that the property would depreciate in value before the date of sale.

¶13 With exceptions not applicable here, the value of marital assets generally is determined at or near the time of dissolution. *See In re Marriage of Thorner*, 2008 MT 270, ¶ 36, 345 Mont. 194, 190 P.3d 1063; *In re Marriage of Hochhalter*, 2001 MT 268, ¶ 17, 307 Mont. 261, 37 P.3d 665. Here, David and Twila stipulated to the Property's value at the time of dissolution, the Decree adopted that value to determine equitable distribution of the net equity, and the equalization payment was not contingent on a future sale price. Where the Decree did not so provide, the District Court was not required to revisit valuation because of a subsequent change in the property's market value before it sold.

¶14 David asserts, though, that the 2019 Order and Rationale conflicts with the requirement in the 2016 Decree that "appropriate modifications" be made to equalize the distribution of the marital estate in the event that neither party retained the 12th Street Property. We disagree for two reasons. First, David misconstrues the plain language of the Decree. Finding 29 provided that if David failed to obtain refinancing, Twila would

have the option to purchase. In that case, "[t]he values and amounts set forth in these findings shall apply and the appropriate modifications shall be made to the spreadsheet exhibit to determine sums to be paid to the respective parties to equalize the division of the marital estate." Twila did not exercise her option, and the parties listed the 12th Street Property for sale.[1] The plain language of the District Court's 2016 Decree did not order the parties to make modifications in the event that neither retained the Property and they instead listed it for sale. Because Twila did not exercise her option to retain control of the 12th Street Property, the 2016 Decree did not require "appropriate modifications" when, as the Decree specified, the parties sold the Property.

¶15 Second, we agree with Twila that the District Court is in the best position to interpret its own decree. David argues that the Order and Rationale is inconsistent with other determinations the District Court made with regard to allocation of the parties' assets and debts. He contends that the ultimate distribution of the estate runs afoul of the District Court's own emphasis on the "imperative of equitable division[.]" But the District Court had the chance to consider this argument in briefing on Twila's two motions for distribution of funds. After doing so, the District Court plainly stated its rationale for rejecting David's position—both parties ran certain risks; the 12th Street Property was "subject to the vagaries of the marke[t]"; and it was "not inclined to go back and re-adjust those determinations every time a valuation of an item is later determined to have been

---

[1] The parties dispute whether Twila ever tried to exercise her option. But the District Court determined "that did not occur[,]" and our review of the record does not convince us that it was in error.

8

high, or low for that matter." In its Order and Rationale, the District Court explained that the Decree awarded David the property and that "the equalization payments were fixed, with the sole exception being the possible contingency that [Twila] might end up with the property, in which case those calculations would have to be modified. That did not take place."

¶16 An appellate court defers to the district court's interpretation of its own orders as long as that interpretation is reasonable. *See, e.g., Cave v. Singletary*, 84 F.3d 1350, 1354-55 (11th Cir. 1996) (collecting cases); *United States v. Soderling*, 1992 U.S. App. LEXIS 15827, *11 (9th Cir. 1992) (citations omitted). We have held repeatedly that a reviewing court is not justified in substituting its discretion for that of the trial court. *See, e.g., Berthiaume*, 173 Mont. at 425, 567 P.2d at 1390. The question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *See Berthiaume*, 173 Mont. at 425, 567 P.2d at 1390. We cannot say that the District Court acted arbitrarily or exceeded the bounds of reason when it issued its Order and Rationale.

¶17 *2. Did the District Court err in awarding Twila judgment interest, or err in its calculation of judgment interest?*

¶18 David argues that because the District Court abused its discretion in awarding Twila the $65,870 cash equalization payment, it also erred in awarding her judgment interest based upon that sum. He contends that "judgment interest only began to run if either party

9

kept the property <u>and</u> did not timely provide the other with his/her 'Cash Equalization Payment[.]'"

¶19 Our resolution of Issue 1 is dispositive. We have determined that the District Court did not abuse its discretion in awarding Twila the cash equalization payment of $65,870 in its Order and Rationale. Likewise, the District Court did not err in awarding judgment interest to Twila in accordance with the 2016 Decree. As noted above, the District Court determined based on the evidence before it that Twila did not exercise her option to refinance the 12th Street Property. Thus, pursuant to the 2016 Decree, David's judgment interest began to run when the payment was due, ninety days from June 14, 2016—the date of the Decree. Section 25-9-204, MCA. *See In re Marriage of Mannix*, 242 Mont. 137, 140, 788 P.2d 1363, 1365 (1990) (noting that a dissolution decree is "the final determination of the rights of the parties, and therefore a Judgment[]" to which statutory interest applied until the date payment was tendered).

## CONCLUSION

¶20 The District Court did not abuse its discretion or commit an error of law in awarding Twila the cash equalization payment originally determined in the Decree, together with judgment interest. Its Order is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON

10