FILED

07/20/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0433

DA 20-0433

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 182N

IN THE PARENTING OF:

T.J.E.,

     A Minor Child,

RACHEL RENE ERICKSON,

     Petitioner and Appellant,

  and

TRAVIS JOHN ERICKSON,

     Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DR-13-240D
                 Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Rachel Rene Erickson, Self-Represented, Kalispell, Montana

       For Appellee:

           Travis John Erickson, Self-Represented, Kalispell, Montana

                        Submitted on Briefs:  June 23, 2021

                                 Decided:  July 20, 2021

Filed:

                      _____
                             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Rachel Rene Erickson appeals an Eleventh Judicial District Court order denying her request to take over the mortgage on, and move into, her ex-husband Travis John Erickson's home—previously their marital home. She argues that during a 2016 hearing the District Court modified the final dissolution decree to allow this action.[1] We affirm.

¶3 Rachel and Travis were married in 2008. Represented by counsel, Rachel petitioned the District Court in April 2013 for legal separation, including a parenting plan for the parties' son. Travis, representing himself, responded and sought dissolution of the parties' marriage. In July 2015, under a separate cause number and both self-represented, the parties jointly petitioned the District Court for dissolution of their marriage. Travis then filed in the second cause number a Consent to Entry of the final decree that Rachel had signed, waiving her right to appear and testify at the final dissolution hearing. He also filed a new parenting plan, which differed substantially from the one Rachel submitted in the earlier action.

---

[1] Rachel frames the issue under several other legal theories that we do not address because they either are unnecessary given the dispositive issue before the Court, or because they were not preserved for appeal. *State v. Rodriguez*, 2021 MT 65, ¶ 20, 403 Mont. 360, 483 P.3d 1080 (citation omitted).

¶4 The District Court, the Hon. David M. Ortley presiding, held a final dissolution hearing at which only Travis was present. The court entered its final decree of dissolution on the parties' joint petition on November 27, 2015. It awarded "all right, title, and interest" in the home to Travis and stated that Rachel "shall transfer []her interest in this real property to [Travis]." The decree allocated to Travis the mortgage debt on the home. It did not include any provisions regarding his responsibility to refinance or what should happen in the event of a default. The District Court also adopted Travis's proposed parenting plan.

¶5 In December 2015, Rachel filed a motion to vacate the parenting plan and to dismiss the case, alleging that relief should be granted under M. R. Civ. P. 60 because Travis committed fraud in relation to the parties' parenting plan. Rachel alternatively requested that the matter be consolidated with the earlier case she had filed and that a final dissolution decree be entered in that case, "providing that each be responsible for the home and any debt related thereto be awarded to Travis[.]" Included with the motion was Rachel's affidavit, which stated that she did not know there was a separate dissolution case, that she would not have signed "the paperwork" or would have appeared at the dissolution hearing had she understood the substance of the filings, and that Travis's testimony at the dissolution hearing was "not at all truthful."

¶6 The court held a hearing on the motion on January 6, 2016. Rachel was present with counsel, but neither Travis nor any counsel on his behalf appeared. Rachel clarified her fraud allegations, which focused on the parenting plan, and claimed that she did not receive notice of the dissolution hearing. The January 6 hearing centered on the parenting plan

3

and custody of the parties' son—Rachel did not at any time allege that Travis committed fraud related to the property distribution.

¶7    At the end of the hearing, the court stated that it proposed "to set aside . . . the Parenting Plan, and to the extent that there is a dispute as to the property disposition and the allocation of debt, I would set that aside." It then confirmed that the final dissolution decree awarded the home and the entirety of the mortgage debt to Travis, and it confirmed that Rachel was not seeking to modify the property distribution. It ruled that "[t]he distribution of personal property and allocation of debt likewise remains as ordered." After the court's oral ruling, Rachel's counsel informed the court that Rachel still was listed on the home's deed as a joint tenant with Travis. Rachel's counsel stated that, rather than removing her from the title, "[Rachel] wants first right of taking over" should Travis default on the mortgage. The District Court stated that the title should be left as is because "if [Rachel's] name is on the title the lender would have to look to her anyway." It then ordered that:

> the home should remain titled as is, and to the extent that [Travis] were to refinance the home, and could remove her from the title by operation of refinancing, that would be acceptable, but to the extent that he defaults on that loan then [Rachel] would have the right under the dissolution decree to step in and save the home from foreclosure or a default on the note.

The minute entry of the hearing—prepared by a Deputy Clerk of District Court—stated in pertinent part:

> **IT IS HEREBY ORDERED** that the Order entered on November 27, 2015 in DR-15-442D is set aside as it relates to the parenting plan. The Decree of Dissolution and distribution of property and allocation of debt shall remain as ordered. The home shall remain titled as is unless Travis refinances in

4

order that he may remove Rachel's name. To the extent that he defaults on the loan, Rachel shall have the opportunity to assume the loan.

¶8 Travis defaulted on the mortgage payments for the months of September, November, and December 2019. On March 19, 2020, the IRS withheld $1,855.39 from Rachel's 2019 federal tax refund to cover the amount of Travis's default.

¶9 On June 2, 2020, Rachel, again representing herself, filed a motion to "[r]einforce the Court's Order from 1-6-2016[.]" She attached a copy of the January 6, 2016 minute entry and argued that this ruling allowed her to assume the mortgage and move into the home. She requested the court to enforce that order because Travis had been in default for five months and she had "assumed the loan" for three of those five months. Rachel additionally alleged that allowing her to assume the mortgage and move into the home would be in the interests of her son. At a July 2020 hearing on the motion, Travis represented that he had not refinanced the home.

¶10 The District Court, the Hon. Dan Wilson now presiding, denied Rachel's motion on July 24, 2020. The court noted that it had reviewed the transcript of the January 2016 hearing before Judge Ortley and that "[n]othing in the January 06, 2016 hearing amended or vacated the provisions of the Decree awarding Travis the Property and allocating the mortgage debt to him." It further noted that the decree was silent as to default on the mortgage debt. The District Court held:

> The Court now deems and considers the above-quoted statement made by Judge Ortley in the January 06, 2016 hearing concerns only Rachel's right to cure the default on the mortgage loan on the Property in the event that Travis defaults on the loan, a right she would possess in any event as a party to the mortgage debt. The statement made by Judge Ortley does not grant Rachel *any* further right in the Property and does not, more particularly, grant Rachel

5

the right to occupy the residence or otherwise assume possession or control of the Property in the event Travis defaults on the mortgage loan and she cures the default. She may have other remedies in that event, but assuming possession of the Property is not one of them. [Emphasis original.]

¶11 "An appellate court defers to the district court's interpretation of its own orders as long as that interpretation is reasonable." *In re Marriage of Ruis*, 2020 MT 90, ¶ 16, 399 Mont. 524, 462 P.3d 204 (citations omitted). We thus review "whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Marriage of Ruis*, ¶ 16.

¶12 Rachel argues on appeal that the District Court's January 6, 2016 oral ruling and minute entry amended the final decree of dissolution, allowing her to "assume the loan and take over the property" upon Travis's default. She maintains that the District Court correctly set aside the final decree of dissolution, "apparently . . . under Rule 60(b)(3)[,]" and contends that her status as primary custodian and caretaker of the parties' son "likely entered the [c]ourt's reasoning to allow [her] to have the house[.]" She also claims that Travis "is entitled to [no] equity" based on his alleged damage to the home and that "[h]e should be held financially responsible for the damages caused to [her] equity." Rachel argues that the home therefore should be "awarded to [her]."

¶13 "[E]ntry of final judgment constitutes a final adjudication of the rights and obligations of the parties with respect to the status of the marriage and property rights[.]" Section 40-4-134, MCA. A court may grant relief from a final decree upon a showing of "fraud, duress, accident, mistake, or other grounds recognized at law or in equity or to make a motion pursuant to the Montana Rules of Civil Procedure."

6

Section 40-4-135, MCA. M. R. Civ. P. 60(b)(3) provides such an avenue, allowing relief from judgment or order due to "fraud . . . , misrepresentation, or misconduct by an opposing party[.]" The rule thus "is designed to be applied primarily as an exception to the finality of a judgment where a party was wronged through no fault of its own." *Wagenman v. Wagenman*, 2016 MT 176, ¶ 11, 384 Mont. 149, 376 P.3d 121 (citation, internal quotation marks omitted).

¶14 Rachel's December 2015 Rule 60(b) motion properly alleged fraud as a basis to set aside the parenting plan, but her fraud allegation did not extend to the dissolution decree or to the property distribution. Rachel reiterated her argument regarding the parenting plan at the January 2016 hearing. She did not, at that hearing or in any motion, request the court to reopen and modify the property distribution or assert grounds for such an action. The District Court granted the relief Rachel requested and explicitly stated in the 2016 hearing that it would leave the dissolution and property allocation "as is," setting aside only the parenting plan.

¶15 The District Court's January 6, 2016 statement regarding Rachel's right to take over the mortgage thus could not effectuate an amendment to the decree. Because the final dissolution decree explicitly allocated the marital home to Travis, ordered Rachel to transfer her joint interest in it to Travis, and ordered that Travis be responsible for the mortgage, the District Court did not act arbitrarily or exceed the bounds of reason by denying Rachel's June 2020 motion.

¶16 We recognize a party's ability under § 40-4-208(3)(b), MCA,[2] to seek modification of a final dissolution decree's property disposition when she alleges the disposition is unconscionable. *See In re Marriage of Laskey*, 252 Mont. 369, 372, 829 P.2d 935, 937 (1992); *In re Marriage of Simpson*, 2018 MT 281, ¶¶ 12, 17–18, 393 Mont. 340, 430 P.3d 999. Though such an argument certainly may be available here—indeed, the decree assigns the entire interest in the home and responsibility of the mortgage debt to Travis but fails to take into account Rachel's responsibility on the mortgage debt or her interest in the property should Travis fail to refinance—Rachel did not assert it or seek relief under that section in the motion at issue in this appeal. Our decision does not preclude her from doing so in the future, but we express no opinion on the merits.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not act arbitrarily or exceed the bounds of reason when it denied Rachel's motion on the basis that its January 6, 2016 statement did not amend the parties' final dissolution decree. We accordingly affirm.

/S/ BETH BAKER

---

[2] Section 40-4-208(3)(b), MCA, states: "[t]he provisions as to property disposition may not be revoked or modified by a court except . . . if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR